1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EHAB AHMED,

Plaintiff,

v.

CHRISTINE WORMUTH, SECRETARY,
DEPARTMENT OF THE ARMY,

Defendant.

Case No. 22-cv-04365-TSH

**ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO
DISMISS**

Re: Dkt. No. 27

## I.   INTRODUCTION

Pending before the Court is Defendant Christine Wormuth's Motion to Dismiss pursuant to
Federal Rule of Civil Procedure ("Rule") 12(b)(6).  ECF No. 27.  Plaintiff Ahmed filed an
Opposition (ECF No. 29) and Wormuth filed a Reply (ECF No. 30).  For the reasons stated below,
the Court **GRANTS IN PART AND DENIES IN PART** the motion.[1]

## II.   BACKGROUND

### A.   Factual Background

Plaintiff Ahmed is a resident of Monterey County, California.  ECF No. 25 ¶ 1.  Christine
Wormuth, Secretary for the Department of the Army, is named in her official capacity.  *Id.* ¶ 2.

Ahmed is fifty years old, African, and Sunni Muslim.  *Id.* ¶ 6.  He is also from Egypt.  *Id.*
Ahmed was hired by the Defense Language Institute ("DLI") in the Foreign Language Center in or
around 2007 as a teacher of the Hebrew language.  *Id.* ¶ 8(a).  In or around 2014, Ahmed was
promoted to an Associate Professor of the Hebrew language.  *Id.*

In or around December 2020, Plaintiff received notice that the Hebrew Department would

_____

[1] The parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos.
5, 14.

1
2
3
4
5
6

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

be downsizing. *Id.* ¶ 8(b). Ahmed spoke with the Dean, Dr. Sung-Frear, who assured him that if he took and passed Oral Proficiency Interview tests in Arabic, Modern Standard Arabic, Egyptian, and Levantine, he would be transferred to the Arabic school. *Id.* ¶ 8(b). Ahmed took and passed these tests, but Ahmed was not even offered an interview. *Id.* At the time, Ahmed had fourteen years of experience at DLI, had high "DLPT" results, and high professional performance results. *Id.* ¶ 8(c).

On or around April 2, 2021, DLI management announced that instead of downsizing, the Hebrew Department would actually be closing by March 2022 and only two teachers would be permitted to remain until March 2022. *Id.* ¶ 8(d). On or around April 14, 2021, Plaintiff was informed that his Not to Exceed date was shortened from October 2, 2021 to July 23, 2021. *Id.* ¶ 8(f). Plaintiff's colleague, who Plaintiff had mentored and only had three years of experience, was allowed to stay until March 2022. *Id.*

On or around June 2, 2021, Dr. Sung-Frear called Plaintiff and advised that he would be transferred to the Arabic school in a few weeks. *Id.* ¶ 8(j). Ahmed continued to apply for positions but, despite being highly qualified, was not contacted for any interviews. *Id.* ¶ 8(l). Dr. Sung-Frear then emailed him on or around July 6, 2021, to advise that he was not being transferred, and instead he had two weeks before his Not to Exceed date. *Id.* ¶ 8(m).

Ahmed reached out to an Equal Employment Opportunity ("EEO") officer on or around July 13, 2021, and filed a complaint alleging discrimination. *Id.* ¶ 8(n). On July 16, 2021, the parties executed a settlement agreement whereby Ahmed's termination date would be extended to October 2, 2021, and he would be considered a qualified Arabic teacher for the purpose of allowing Ahmed to apply to the internal calls within the Arabic school. *Id.* ¶¶ 8(n), 8(w).

On or around July 23, 2021, Ahmed noticed that his name had not been added to the Arabic school list for receiving internal candidates. *Id.* ¶ 8(o). Plaintiff reached out to the Chief of Staff, Steve Collins, and Ahmed was permitted to apply for the role of Levantine Team Leader. *Id.* Plaintiff received an interview for the position on or around August 4, 2021, but half of the interview panel were not Arabic speakers and forty percent of the questions were in Arabic, meaning it would be difficult for the non-Arabic speakers to evaluate his answers. *Id.* ¶ 8(p).

1   Ahmed's colleagues confirmed to him that this interview process was unusual.  *Id.*  Ahmed was
2   not selected for the position and was told that it was because he was from the Hebrew Department.
3   *Id.*

4         On or around August 16, 2021, Ahmed was informed that a Hebrew Department colleague,
5   who was secular and Caucasian, was starting a new role as a Hebrew teacher in Continuing
6   Education.  *Id.* ¶ 8(s).  Plaintiff was shocked because this colleague was not tenured and there had
7   been no job announcement.  *Id.*  On or around August 19, 2021, another colleague in the Hebrew
8   Department, who was Causation, secular, and in his thirties, was chosen for a position as Assistant
9   Dean of UAA (Chinese school).  Ahmed had worked at DLI seven years longer than this colleague
10  and had mentored him, but Ahmed was not interviewed or offered the job.  *Id.*

11        Ahmed contacted an EEO officer again on or around September 3, 2021, and filed another
12  EEO complaint of noncompliance with the settlement agreement as well as further discrimination.
13  *Id.* ¶ 8(w).  Ahmed also mailed a letter to the EEO Director explaining that DLI was in violation of
14  the parties' settlement agreement because Ahmed was not being considered a qualified Arabic
15  teacher for open internal positions.  *Id.*

16        On or around September 10, 2021, the Chairperson of the Egyptian Department reviewed
17  Ahmed's resume and background and advised that he would recommend Ahmed for the Egyptian
18  ICPT testing project.  *Id.* ¶ 8(y).  The Chairperson then told Ahmed on September 14, 2021 that he
19  recommended Ahmed, but that Mr. Collins did not take action on the recommendation.  *Id.*

20        On or around September 27, 2021, Associate Provost, Dr. Kanbar, announced that the
21  Arabic school needed two additional teachers in the Israeli dialect.  *Id.* ¶ 8(aa).[2]  Ahmed emailed
22  to ask if he could receive a contract extension to practice his Israeli dialect and pass the Oral
23  Proficiency Interview test, but did not receive a response.  *Id.* ¶ 8(bb).

24        On or around September 30, 2021, Ahmed found out that at least three Arabic teachers
25  were retiring before the end of 2021.  *Id.* ¶ 8(cc).  Ahmed emailed again to ask why his contract
26  could not be extended to replace one of these teachers, but received no response.  *Id.*

United States District Court
Northern District of California

---

[2] Plaintiff's opposition clarifies that he meant to say the Iraqi dialect.  ECF No. 29 at 10 n.1.

1    Ahmed's last day of work for DLI was October 1, 2021.  *Id.* ¶ 8(dd).

2    **B.**    **Procedural Background**

3        On July 28, 2022, Ahmed filed the instant action, alleging discrimination based on race,

4    religion, national origin, age, and association with religion pursuant to Title VII of the Civil Rights

5    Act of 1964.  ECF No. 1 at 2.  Ahmed also alleged retaliation for voicing concerns.  *Id.*

6        On December 16, 2022, Defendant Wormuth filed a motion to dismiss pursuant to Rule

7    12(b)(6).  ECF No. 12.  On February 28, 2023, the Court granted dismissal of Ahmed's causes of

8    action and granted leave to amend.  ECF No. 21.  On April 28, 2023 Ahmed filed a First Amended

9    Complaint ("FAC") raising the following causes of action: 1) Title VII discrimination on the basis

10   of race; 2) Title VII discrimination on the basis of national origin; 3) Title VII discrimination on

11   the basis of religion; 4) age discrimination in violation of the Age Discrimination in Employment

12   Act ("ADEA"); and 5) retaliation under Title VII.  *See* ECF No. 25.

13       On May 11, 2023, Wormuth filed the instant Motion to Dismiss under Rule 12(b)(6).  ECF

14   No. 27.  Ahmed filed an Opposition on May 25, 2023.  ECF No. 29.  Wormuth filed a Reply on

15   June 1, 2023.  ECF No. 30.

16                                 **III.    LEGAL STANDARD**

17       A motion to dismiss under Rule "tests the legal sufficiency of a claim.  A claim may be

18   dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of

19   his claim which would entitle him to relief."  *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011)

20   (citation and quotation marks omitted).  Rule 8 provides that a complaint must contain a "short

21   and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

22   8(a)(2).  Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on

23   its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility does not mean

24   probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully."

25   *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009).  A complaint must therefore provide a defendant with

26   "fair notice" of the claims against it and the grounds for relief.  *Twombly*, 550 U.S. at 555

27   (quotations and citation omitted).

28       In considering a motion to dismiss, the court accepts factual allegations in the complaint as

United States District Court
Northern District of California

4

true and construes the pleadings in the light most favorable to the nonmoving party.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).  However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted).  A court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'"  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV.  DISCUSSION

### A.  Request for Judicial Notice

Wormuth requests judicial notice of the following:

> A. EEO Counselor's Report for Agency Docket No. ARPOM21JUL02200;
>
> B. July 16, 2021 Negotiated Settlement Agreement in Agency Docket No. ARPOM21JUL02200;
>
> C. EEO Counselor's Report for Agency Docket No. ARPOM21SEP02965;
>
> D. October 25, 2021 1st Correction to Partial Acceptance of Issues to Be Investigated;
>
> E. September 3, 2021 Non-Compliance Letter;
>
> F. October 6, 2021 Final Agency Decision;
>
> G. January 10, 2022 Equal Employment Opportunity Commission ("EEOC Decision"); and
>
> H. April 25, 2022 EEOC Decision Regarding Plaintiff's Request for Reconsideration.

1    ECF No. 28; Exs. A-H.  Ahmed does not contest Wormuth's request.

2          Ahmed requests judicial notice of the following:

3                A.  September 3, 2021 Non-Compliance Letter;

4                B.  September 24, 2021 Non-Compliance Letter;

5                C.  October 6, 2021 Final Agency Decision;

6                D.  January 10, 2022 EEOC Appeal Decision;

7                E.  April 25, 2022 EEOC Decision Regarding Plaintiff's Request for
                     Reconsideration;
8
                 F.  Initial Interview Data Sheet dated July 13, 2021; and
9
                 G.  Initial Interview Data Sheet dated July 13, 2021.
10

11   *See* ECF Nos. 29 at 10-11; 29-1.  Wormuth does not contest Ahmed's request.

12         "Generally, district courts may not consider material outside the pleadings when assessing

13   the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure."

14   *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  The Court may take

15   judicial notice of matters that are (1) generally known within the trial court's territorial jurisdiction

16   or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot

17   reasonably be questioned.  Fed. R. Evid. 201(b).  The Court may also consider documents whose

18   contents are alleged in the complaint, even if not attached, provided the complaint "necessarily

19   relies" on the documents or contents thereof, the document's authenticity is uncontested, and the

20   document's relevance is uncontested.  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir.

21   2010); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not

22   attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers

23   extensively to the document or the document forms the basis of the plaintiff's claim.").

24         As the Court noted in its prior Order, "a court may take judicial notice of matters of public

25   record without converting a motion to dismiss into a motion for summary judgment."  *Khoja*, 899

26   F.3d at 999 (citations and quotations omitted).  Courts have particularly found it appropriate to

27   take judicial notice of documents related to EEO complaints.  *See, e.g., Lacayo v. Donahoe*, No.

28   14-CV-04077-JSC, 2015 WL 993448, at *9 (N.D. Cal. Mar. 4, 2015) ("In the context of

1
2
3

employment discrimination cases in particular, it is well established that courts may consider the administrative record of a plaintiff's claims before the EEOC as judicially noticeable matters of public record.").

4
5
6
7
8
9
10
11
12
13
14
15
16
17

Both parties request that the Court take judicial notice of the September 3, 2021 Non-Compliance Letter, October 6, 2021 Final Agency Decision, January 10, 2022 EEOC Decision, and April 25, 2022 EEOC Decision Regarding Plaintiff's Request for Reconsideration.  *See* ECF Nos. 28, Exs. E-H; 29-1.  The Court finds these documents are public records and related to Plaintiff's allegations regarding his EEO complaints and administrative exhaustion.  The Court takes judicial notice of the date of Plaintiff's September 3, 2021 letter, that it was directed to the EEOC Director, and that Plaintiff complained about breach of his settlement agreement.  *See* ECF Nos. 28, Ex. E; 29-1 at 2.  The Court also takes judicial notice of the dates of the October 6, 2021, January 10, 2022, and April 25, 2022 EEOC decisions, that they pertain to allegations of noncompliance with the settlement agreement, and that at each stage a determination was made that the settlement agreement was not breached.  ECF Nos. 28, Exs. E-H; 29-1 at 6-29.  *See Cloud v. Brennan*, 436 F. Supp. 3d 1290, 1303 (N.D. Cal. 2020) (noting that a Court may take judicial notice of document on which allegations in the complaint necessarily rely and noting "[g]iven that both parties rely on Cloud's EEO filings, they are likely essential to her claims here.").

18
19
20
21
22
23
24
25
26

The Court previously took judicial notice of the September 2021 EEO Counselor's Report, and deems it appropriate to again take judicial notice of the report and Plaintiff's discrimination allegations, although not the truth of the allegations.  *See* ECF No. 28, Ex. C.  On the same basis, as an administrative record of Ahmed's claims before the EEOC, the Court takes judicial notice of the July 13, 2021 initial interview sheet and the July 2021 EEO Counselor's Report, and of the discrimination allegations contained therein.  *See* ECF Nos. 28, Ex. A; 29-1 at 30-41.[3]  *Cf. Winns v. DeJoy*, No. 21-CV-04264-VKD, 2022 WL 673600, at *4 (N.D. Cal. Mar. 7, 2022) (taking judicial notice of information in an EEO report, specifically the date of plaintiff's initial contact with the EEO office, and the description of plaintiff's claims of "discrimination on the basis of

27
28

---

[3] The Court understands Ahmed's Exhibits F and G to be duplicative.  *See* ECF No. 29-1 at 30-41.

1   race, religion and retaliation.").  The Court also takes judicial notice of the date of the October 25,

2   2021 EEOC document and the discrimination allegations contained therein, although again not the

3   truth of the allegations.  *See* ECF No. 28, Ex. C.  The Court also takes judicial notice of the date of

4   Ahmed's September 24, 2021 letter and that he alleged breach of the agreement.  *See* ECF No. 29-

5   1 at 4.

6           The settlement agreement, of which Wormuth asks the Court to take judicial notice, is a

7   more complicated question.  On the one hand, it would seem outside the scope of a "public

8   record" subject to judicial notice.  However, it does appear to be the basis of Ahmed's EEOC

9   claim alleging breach of the agreement.  It would thus seem to be very much part of the

10  "administrative record of a plaintiff's claims before the EEOC."  *Lacayo v. Donahoe*, 2015 WL

11  993448, at *9.  Further, it is susceptible to the incorporation-by-reference doctrine, as Ahmed

12  refers to it multiple times in the FAC, including referring to the terms of the agreement and

13  alleging they were breached.  *See, e.g.* ECF No. 25 ¶¶ 8(n), 8(t), 8(w) (all referring to the

14  settlement agreement).  The Court determines that, under these circumstances, it will take judicial

15  notice of the fact that the parties entered into a settlement agreement on July 16, 2021, and that

16  said agreement arose out of Ahmed's pre-complaint dated July 12-13, 2021 based on age and

17  religious discrimination .  *See* ECF No. 28, Ex. B.  *See also* ECF No. 25 ¶¶ 8(n) (alleging a

18  settlement agreement was signed on July 16, 2021 during a mediation session related to Plaintiff's

19  July 13, 2021 EEO complaint).

20          Accordingly, the Court **GRANTS** the parties' requests for judicial notice to the extent

21  detailed above.

22  **B.      Title VII and ADEA Claims**

23          Ahmed brings claims pursuant to ADEA and Title VII based on race, national origin,

24  religion, and age, as well as retaliation.  *See* ECF No. 25.  Title VII forbids discrimination by

25  employers based on an individual's race, color, religion, sex, or national origin.  42 U.S.C. §

26  2000e-2.  Additionally, the ADEA provides that "[a]ll personnel actions affecting employees or

27  applicants for employment who are at least 40 years of age . . . shall be made free from any

28  discrimination based on age."  *Gomez-Perez v. Potter*, 553 U.S. 474, 479 (2008) (citing 29 U.S.C.

United States District Court
Northern District of California

8

1
2

§ 633a(a)).  The Supreme Court has found that the ADEA also protects federal employees from "retaliation for complaining about age discrimination."  *Id.* at 488.

3

### 1. Administrative Exhaustion

4
5
6
7
8
9
10
11
12

Wormuth argues that Ahmed cannot sustain any claims based on conduct occurring prior to July 20, 2021 for two reasons.  First, Wormuth argues that because Ahmed settled any claims arising on or before the July 16, 2021 settlement agreement, he did not administratively exhaust them.  Second, Wormuth argues that the only other alleged EEO complaint was on September 3, 2021, which cannot administratively exhaust any conduct that occurred before July 20, 2021.  *See* ECF No. 27 at 9-13.  Further, Wormuth argues that Ahmed has not sufficiently pled discrimination under the ADEA for discriminatory conduct after July 20, 2021 because Ahmed's EEO complaint does not raise age discrimination and thus it was not administratively exhausted. *Id.* at 13-14.  The Court addresses each argument in turn.

13
14
15
16
17
18
19
20
21
22
23
24
25

To bring a Title VII claim in district court, a plaintiff must first exhaust his administrative remedies.  42 U.S.C. § 2000e-16(c); *Sommatino v. United States*, 255 F.3d 704, 707 (9th Cir. 2001).  Under the statutory and regulatory scheme, a federal employee must notify an EEO counselor of discriminatory conduct within 45 days of the alleged conduct.  *Sommatino*, 255 F.3d at 708 (citing 29 C.F.R. §§ 1614.105, 1614.106).  Contact with an EEO counselor in the 45-day window also comports with requirements under the ADEA.  *See Whitman v. Mineta*, 541 F.3d 929, 932 (9th Cir. 2008) (noting under the ADEA an employee must either give the EEOC "notice of the alleged discriminatory act within 180 days, and give[] notice of his intent to sue at least thirty days before commencing suit in a federal court," or he must go through the administrative process, which requires "notify[ing] the EEO counselor within forty-five days of the alleged discriminatory conduct.").[4]  "The limitations-period analysis is always conducted claim by claim," and "begins running on any separate underlying claim of discrimination when that claim accrues." *Green v. Brennan*, 578 U.S. 547, 563 (2016).  "This deadline constitutes an administrative

26

---

27
28

[4] The Complaint does not allege Ahmed provided notice of age discrimination within 180 days of the conduct, nor that he gave notice of his intent to sue, and thus the Court interprets Ahmed to be alleging compliance with the 45-day notice for his age discrimination claims in addition to his claims under Title VII.

United States District Court
Northern District of California

'requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'" *Lyons v. England*, 307 F.3d 1092, 1105 (9th Cir. 2002) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). The Supreme Court has clarified that Title VII's claim-processing rules, while mandatory, are non-jurisdictional. *Fort Bend Cty., Texas v. Davis*, 204 L. Ed. 2d 116 (June 3, 2019). However, a plaintiff "must allege compliance with the [mandatory processing rule] . . . in order to state a claim on which relief may be granted." *Williams v. Wolf*, No. 19-CV-00652-JCS, 2019 WL 6311381, at *6 (N.D. Cal. Nov. 25, 2019).

### a. Pre-July 20, 2021 Claims

During the EEO complaint process, a complainant and a federal agency may choose to "resolve the discrimination complaint voluntarily with a settlement agreement, in which case the employee . . . withdraws his formal complaint and foregoes his right to a civil appeal therefrom." *Munoz v. Mabus*, 630 F.3d 856, 861 (9th Cir. 2010) (citing 29 C.F.R. § 1614.603). "Any settlement agreement knowingly and voluntarily agreed to by the parties, reached at any stage of the complaint process, shall be binding on both parties." 29 C.F.R. § 1614.504. The relevant regulation lays out the administrative procedures a complainant must follow if he believes that the employer has failed to comply with the terms of a settlement agreement. *Id.* A complainant "shall notify the EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance." *Id.* "The complainant may request that the terms of settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased." *Id.*

According to the FAC, on July 16, 2021, the parties executed a settlement agreement at a mediation session for Ahmed's July 13, 2021 EEO complaint. ECF No. 25 ¶ 8(n). On or around September 3, 2021, Ahmed contacted an EEO Officer and filed an EEO complaint of noncompliance per the settlement agreement, alleging Plaintiff was not being fairly considered for positions. *Id.* ¶ 8(w). Based on the documents provided to the Court by both parties and the facts the Court found appropriate for judicial notice, on October 6, 2021 the Army issued a decision in its own favor on Ahmed's breach of settlement agreement claim. *See* ECF Nos. 28, Ex. F; 29-1 at 6-17. Ahmed then appealed to the EEOC, and thereafter requested reconsideration, and the EEOC

1

2

3

4

5

found the agreement was not breached.  *See* ECF Nos. 28, Exs. G, H; 29-1 at 9-29.  Ahmed received a right-to-sue letter on May 10, 2022.  ECF No. 25 ¶ 13.  Ahmed does not allege in the FAC, nor in his Opposition, that he reinstated his underlying July 13, 2021 discrimination complaint and exhausted administrative procedures associated with investigation of the underlying discrimination claims.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

The Court finds that Ahmed has not pled exhaustion of his underlying discrimination claims related to his July 13, 2021 complaint, and thus those claims are subject to dismissal under Rule 12(b)(6).  By Plaintiff's own allegations in the FAC and the documents attached with his opposition, Plaintiff did not administratively exhaust the discrimination claims in his July 13, 2021 EEOC contact, but rather administratively exhausted his settlement noncompliance claim.  *See Munoz*, 630 F.3d at 862 ("Had [Plaintiff] chosen to reinstate his underlying discrimination complaint instead of seeking specific performance, his claim could eventually have been heard in federal court after exhausting administrative procedures . . . ."); *Taylor v. Geithner*, 703 F.3d 328, 335 (6th Cir. 2013) ("Section 1614.504 allows a complainant either to seek injunctive relief, i.e., specific performance of the settlement agreement, within the agency structure or to request what is essentially an unraveling of the settlement agreement so that the complainant can pursue the underlying discrimination claims, which can be reviewed in federal court."); *Mays v. Veterans Canteen Serv*., No. 1:17-CV-808, 2020 WL 2468674, at *3 (S.D. Ohio May 13, 2020) ("Only if the complainant requests reinstatement and exhausts her administrative remedies can the claims be reviewed in federal court."); *Barraza v. McHugh*, No. 15 CV 832 JAP/GBW, 2016 WL 10538677, at *7 (D.N.M. Apr. 13, 2016) ("However, when Plaintiff entered into the NSA, he halted the administrative process for those claims.  The only way Plaintiff could exhaust the administrative process as to those claims was for Plaintiff to request reinstatement of his original claims.").

24

25

26

27

28

Ahmed argues that he did administratively exhaust his claim related to the breach of the settlement agreement, and under 29 C.F.R. § 1614.407, he is permitted to file a civil action for the underlying discrimination claim after receipt of the EEOC's final decision on the breach of settlement claim.  *See* ECF No. 29 at 9.  However, "an employee's right to a civil appeal pursuant to § 1614.407 is limited by the nature of his underlying grievance."  *Munoz*, 630 F.3d at 863.  In

United States District Court
Northern District of California

*Munoz*, a plaintiff brought a breach of settlement agreement claim under Title VII to enforce his predetermination settlement agreement. The Ninth Circuit found that it did not have subject matter jurisdiction to determine a breach of settlement agreement claim. *See id.* at 862. Although plaintiff there was seeking enforcement of the agreement, *Munoz* counsels that this Court does not have subject matter jurisdiction over claims for breach of a Title VII settlement agreement.[5] *See Munoz*, 630 F.3d at 862 ("Congress had no intention of providing a cause of action based on an alleged breach of a predetermination settlement agreement."). Ahmed's underlying grievance from which he filed a civil appeal is the breach of settlement claim, and the Court does not have subject matter jurisdiction. *Cf. Jain v. Brennan*, No. 118CV04446PAESDA, 2019 WL 2451291, at *4 (S.D.N.Y. Apr. 25, 2019) ("Congress expressly waived sovereign immunity for Title VII claims based on, inter alia, an appeal from a decision or order 'on a complaint of discrimination based on race, color, religion, sex or national origin.' However, in the present case, Jain is not pursuing an appeal from a decision or order based on a discrimination claim as identified in 42 U.S.C.A. § 2000e-16. Rather, he appeals from a decision of the EEOC dated February 15, 2018 regarding breach of the previously entered-into settlement agreement.") (quoting 42 U.S.C.A. § 2000e-16(c))*, report and recommendation adopted*, No. 18CIV4446PAESDA, 2019 WL 2992173 (S.D.N.Y. July 9, 2019). Thus, the fact that Plaintiff administratively exhausted his breach of settlement claim does not provide the Court the ability to hear his claims related to the underlying discrimination claims resolved in the July 16, 2021 agreement.

Ahmed argues that his notice from the EEOC issuing a final decision for his breach of settlement claim included language that he had a right to file a civil action in District Court within ninety (90) days of the date he received the decision. *See* ECF No. 29 at 10. However, courts that

---

[5] In *Fort Bend Cty., Texas*, the Supreme Court held that mandatory claim-processing rules are nonjurisdictional in the context of private employers under Title VII. 204 L. Ed. 2d 116. This Court has previously applied *Fort Bend* in the context of a federal employer as well and held that administrative exhaustion must be pled under Rule 12(b)(6). *See Cloud*, 436 F. Supp. 3d at 1302 ("The Supreme Court recently clarified that Title VII's claim-processing rules, while mandatory, are non-jurisdictional.") (citing *Fort Bend Cty.*, 204 L. Ed. 2d 116). The Court still considers *Munoz's* ruling regarding breach-of-settlement-agreement claims to constitute a decision on subject-matter jurisdiction. *See Fort Bend Cty.*, 204 L. Ed. 2d 116 (describing subject-matter jurisdiction as "the classes of cases a court may entertain.").

United States District Court
Northern District of California

have considered this language have determined it cannot be interpreted to waive sovereign immunity and confer subject matter jurisdiction.  *See Kaplan v. James*, 25 F. Supp. 3d 835, 841 (E.D. Va. 2014) ("[T]o the extent that Plaintiff relies on the statements in the EEOC letter regarding her appellate rights, boilerplate statements in an agency decision cannot waive sovereign immunity and confer jurisdiction to this Court."); *Jain v. Brennan*, 2019 WL 2451291, at *5 ("This 'boilerplate language attached to every EEOC decision' does not create a waiver of sovereign immunity.  Further, 'the EEOC does not have the authority to waive sovereign immunity through its regulations.'") (quoting *Charles v. McHugh*, 613 F. App'x 330, 335 (5th Cir. 2015)).  Ahmed also argues that he was never offered the opportunity to reinstate the complaint. *See* ECF No. 29 at 8-12.  He does not cite to any case law in support of his argument that the EEOC was required to offer him the opportunity to reinstate the complaint or that such failure excuses that the underlying discrimination claims are not administratively exhausted.  The plain language of 29 C.F.R. § 1614.504 indicates that the burden is on the complainant to make the request.  *See* 29 C.F.R. § 1614.504 ("The complainant may request that the terms of settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased.").  In sum, the Court does not find either of Ahmed's arguments helpful to his failure to exhaust administrative remedies on his underlying discrimination claims.

The Court thus finds that Plaintiff has not adequately pleaded administrative exhaustion of his July 13, 2021 discrimination claims.  The SAC does not otherwise refer to an EEO contact prior to September 3, 2021, nor does it provide sufficient factual allegations from which the Court could infer such a contact occurred.  The Complaint additionally fails to allege facts supporting a basis for equitable tolling, waiver, or estoppel.  Thus, Ahmed has not adequately pled exhaustion of administrative remedies for conduct occurring prior to July 20, 2021, 45 days prior to the September 3, 2021 EEO contact.  *See, e.g., Robinson v. Rigas*, No. 20-CV-07907-JSC, 2021 WL 3112419, at *4 (N.D. Cal. July 22, 2021) (finding failure to promote allegations outside the 45-day window were time-barred where plaintiff conceded he had only made one EEO complaint).

Accordingly, the Court **GRANTS** Wormuth's Motion to Dismiss to the extent Ahmed's

1       claims are based on agency conduct prior to July 20, 2021.  The Court **DENIES** leave to amend

2       these claims.  By Ahmed's own allegations, he did not administratively exhaust the underlying

3       discrimination claims based on the July 13, 2021 EEO complaint.  Further, the Court previously

4       found that Ahmed failed to allege exhaustion for any conduct that occurred prior to July 20, 2021

5       and gave Ahmed leave to amend.  ECF No. 21 at 5-8.  He has failed to allege any additional facts

6       that show exhaustion, and the Court takes this as confirmation that further amendment would be

7       futile.

8                            **b.       Post-July 20, 2021 and ADEA Claim**

9              Wormuth argues that Plaintiff cannot maintain a cause of action under the ADEA for any

10      claims after July 20, 2021, because the September 3, 2021 EEO complaint does not raise age

11      discrimination and the July 13, 2021 EEO complaint was settled and not reinstated and thus

12      cannot form the basis of Ahmed's claim.  ECF No. 27 at 13-14.  Ahmed argues that he included

13      age discrimination claims in his July 13, 2021 complaint, and that even if that complaint cannot

14      form the basis of this proceeding, when read in conjunction with the September 3, 2021 complaint

15      it supports that his September 3, 2021 EEO complaint raised age discrimination claims.  ECF No.

16      29 at 12-13.

17             As the Court previously stated, in order to meet the requirement of substantial compliance

18      with administrative exhaustion, the allegations of a plaintiff's judicial complaint must be "like or

19      reasonably related to the allegations" in an administrative complaint submitted to the EEOC, such

20      that they would fall within "the scope of an EEOC investigation which [could] reasonably be

21      expected to grow out of the [administrative] charge of discrimination."  *Sosa v. Hiraoka*, 920 F.2d

22      1451, 1456 (9th Cir. 1990) (citations, quotation marks, and emphasis omitted) (addressing the

23      same standard as applied to a private employee's administrative complaint to the EEOC).  S*ee*

24      *also Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003), *as amended* (Jan. 2, 2004)

25      (holding that a court may consider "all claims of discrimination that fall within the scope of the

26      EEOC's actual investigation or an EEOC investigation that could reasonably be expected to grow

27      out of the charge.").  Courts evaluating the similarity between an administrative complaint and a

28      Title VII claim "may consider 'such factors as the alleged basis of the discrimination, dates of

United States District Court
Northern District of California

1   discriminatory acts specified within the charge, perpetrators of discrimination named in the

2   charge, and any locations at which discrimination is alleged to have occurred.'" *Vasquez*, 349

3   F.3d at 644 (quoting *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002)*, as

4   amended* (Feb. 20, 2002)). "In addition, the court should consider plaintiff's civil claims to be

5   reasonably related to allegations in the charge to the extent that those claims are consistent with

6   the plaintiff's original theory of the case." *B.K.B.*, 276 F.3d at 1100. "Procedural technicalities

7   should not be employed to impede a Title VII claimant from obtaining a judicial hearing on the

8   merits." *Ramirez v. Nat'l Distillers & Chem. Corp.*, 586 F.2d 1315, 1321 (9th Cir. 1978) (citing

9   *Love v. Pullman Co.*, 404 U.S. 522 (1972)).

10       The Court previously found that the complaint initiating this proceeding and alleging age

11   discrimination was insufficiently like or reasonably related to the September 2021 EEO complaint

12   because the September 2021 EEO complaint made no mention of Ahmed's age, the relative age of

13   anyone else involved, or other facts from which it might be inferred that Ahmed's claims were

14   related to age discrimination. ECF No. 21 at 10. Ahmed now argues that the statement in the

15   September 2021 EEO Counselor's Report that Ahmed "has not been treated equitably with Jewish

16   Hebrew teachers which it comes to job placements and selections" should be read in conjunction

17   with the July 13, 2021 EEO contact and interpreted to be a reference to a particular, younger

18   teacher, Oded Zalmanovitch, mentioned in the July 13, 2021 EEO contact, and, in turn, as an

19   allegation of age discrimination.[6] ECF No. 29 at 12-13. However, the Court does not see how the

20   statement in the September 2021 document could reasonably be subject to Ahmed's interpretation.

21   The statement refers to a religion ("Muslim – Sunni"), not an age. The statement refers to job

22   vacancies and does not specify a particular job vacancy for an investigator to reasonably

23   understand it as a reference to Mr. Zalmanovitch. That the July 2021 complaint and the

24   September 2021 complaint both address issues with job hiring is insufficient to find that they both

25

26   [6] Ahmed actually argues the following statement should be read in context: "I was not treated
    equitably compared to Jewish Hebrew teachers who were transferred / extended / interviewed for

27   other jobs that I was qualified for." ECF No. 29 at 13. However, the Court understands Ahmed to
    be referring to the statement on page two of the September 2021 EEO Counselor's Report because

28   it is comparable and the Court cannot locate the statement alleged by Ahmed in either the
    September 2021 document or the July 13, 2021 EEO contact.

United States District Court
Northern District of California

1   refer to age discrimination. *Cf. Gomez v. Serv. Emps. Int'l Union Loc. 87*, No. C 10-01888 RS,

2   2010 WL 4704407, at *4 (N.D. Cal. Nov. 12, 2010) ("Gender and national origin represent two

3   separate theories of discrimination, and the fact that here each allegedly flowed from the same

4   factual scenario does not make the allegations relative to gender 'like or reasonably related to' the

5   charges of national origin-based discrimination made before the EEOC."). And as the Court

6   previously noted, Ahmed's age discrimination claim is brought under a different statutory scheme

7   and is thus even more dissimilar. *See Kennedy v. Columbus Mfg., Inc.*, No. 17-CV-03379-EMC,

8   2017 WL 4680079, at *5 (N.D. Cal. Oct. 18, 2017) (determining that Title VII claims were not

9   administratively exhausted where plaintiff's EEO intake questionnaire only referred to claims

10  under the Americans with Disabilities Act and ADEA such that a reasonable EEOC investigation

11  would not have uncovered the Title VII claims as "Title VII, the ADA, and the ADEA are distinct

12  statutory schemes, and the evidence required to prove a violation of each differ significantly.").

13  The Court thus does not find the September EEOC allegations like or reasonably related to the

14  FAC's ADEA claim. Ahmed does not otherwise allege that his age discrimination claims post-

15  July 20, 2021 are administratively exhausted.

16         Accordingly, the Court **GRANTS** Wormuth's Motion to Dismiss Ahmed's claims

17  pursuant to the ADEA for any conduct after July 20, 2021. The Court has already dismissed

18  Ahmed's claims for conduct prior to July 20, 2021, and thus this claim is dismissed in total. This

19  was Ahmed's second opportunity to plead his claim, and the Court's prior Order specified facts

20  Ahmed might include to state a claim, which were not included in the FAC. *See* ECF No. 21 at

21  11-12. The Court thus **DENIES** leave to amend Ahmed's ADEA claim.

22         **2.     Pleading Sufficient Facts for Discrimination Claims**

23         Wormuth additionally argues that Ahmed has failed to state a claim for Title VII

24  discrimination. ECF No. 27 at 14-21. First, Wormuth argues that the FAC fails to specify the

25  conduct underlying each discrimination claim. *Id.* at 15-16. Second, Wormuth argues Ahmed

26  fails to allege facts to infer direct or circumstantial evidence of discrimination for each adverse

27  action. *Id.* at 17-20. Third, Ahmed fails to allege discrimination based on the relevant protected

28  characteristics. *Id.* at 20-21. Ahmed responds that he has pled the necessary elements of his

United States District Court
Northern District of California

1   discrimination claims and that his allegations are sufficiently clear for Wormuth to understand the

2   claims.  ECF No. 29 at 14-16.

3       To establish a prima facie case of discrimination, the plaintiff must show that: "(1) he

4   belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse

5   employment action; and (4) similarly situated individuals outside his protected class were treated

6   more favorably."  *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (9th

7   Cir. 2000).  The fourth element—that the plaintiff was subjected to an adverse employment action

8   because of his membership in a protected class—can be alleged either through direct evidence of

9   discrimination, such as a supervisor's derogatory comment about his race or gender, *see, e.g.,*

10  *E.E.O.C. v. Boeing Co.*, 577 F.3d 1044, 1050 (9th Cir. 2009), or through circumstantial evidence,

11  which may include allegations that similarly situated individuals outside the plaintiff's protected

12  class were treated more favorably or that other circumstances surrounding the at-issue

13  employment action give rise to an inference of discrimination.  *See Surrell v. California Water*

14  *Serv. Co.*, 518 F.3d 1097, 1105-06 (9th Cir. 2008); *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151,

15  1156 (9th Cir. 2010).

16      When a plaintiff pleads a plausible prima facie case, the complaint sufficiently states a

17  claim.  *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1050 n.2 (9th Cir. 2012).  However, a

18  plaintiff is not required to plead a prima facie case of discrimination or retaliation in order to

19  survive a motion to dismiss.  *Id.*; *Lacayo v. Donahoe*, No. 14-CV-04077-JSC, 2015 WL 3866070,

20  at *12 (N.D. Cal. June 22, 2015).  When a plaintiff does not plead a prima facie case, courts still

21  look to the elements of the prima facie case "to decide, in light of judicial experience and common

22  sense, whether the challenged complaint contains sufficient factual matter, accepted as true, to

23  state a claim for relief that is plausible on its face."  *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d

24  781, 796-97 (N.D. Cal. 2015) (citations omitted).

25      As to Wormuth's first argument, that the FAC fails to specify the relevant conduct for each

26  discrimination claim, the Court finds the argument unpersuasive.  The Court previously dismissed

27  Plaintiff's claims as too vague where it was unclear the discriminatory conduct occurred during

28  the relevant time period, namely the time period for which Plaintiff had sufficiently pled

United States District Court
Northern District of California

17

United States District Court
Northern District of California

administrative exhaustion.  *See* ECF No. 21 at 13-14.  The FAC now includes dates and factual details regarding the underlying conduct forming the basis of Plaintiff's claims such that the Court can understand Ahmed alleges conduct during the relevant time period.  *See, e.g.*, ECF No. 25 ¶ 8(p) (referring to a job interview on August 4, 2021 where Plaintiff was interviewed differently than other applicants).  The supportive authority cited by Wormuth involves cases where the complaints provided virtually no structure for someone to understand the underlying claims.  *See Powers v. AT&T*, No. 15-CV-01024-JSC, 2015 WL 5188714, at *4 (N.D. Cal. Sept. 4, 2015) ("While the caption of the FAC lists nine causes of action, the body of the FAC itself contains only factual recitations along with a prayer for relief.  The FAC does not contain claims for relief that clearly indicate the factual basis for each particular cause of action and it leaves Defendants guessing as to which causes of action are alleged against them."); *Gottschalk v. City & Cty. of San Francisco*, No. C-12-4531 EMC, 2013 WL 557010, at *5 (N.D. Cal. Feb. 12, 2013) ("[Pro se] Plaintiff's first amended complaint is rambling and confusing, and contains much material that is redundant or of unclear relevance.  For a number of reasons this makes it difficult to discern what Plaintiff is claiming, and the factual allegations underlying each cause of action.").  The Court does not find Ahmed's FAC comparable nor so vague or disorganized to merit dismissal.

### a. Race Discrimination Claim

Wormuth argues that Ahmed does not include any direct evidence of discrimination nor sufficient circumstantial evidence to make out a claim.  ECF No. 27 at 17-20.

The Court finds that Plaintiff makes sufficient allegations as to the August 16, 2021 and August 19, 2021 job transfers.  Plaintiff alleges that he is African.  ECF No. 25 ¶ 6(a).  Plaintiff alleges that on August 16, 2021 and August 19, 2021, he was informed that two Caucasian, secular males had been hired to two positions instead of him, and that these other employees were ether similarly situated to Plaintiff or had less experience than him.  ECF No. 25 ¶ 8(s).  The Court considers such allegations sufficient to plead a cause of action for race discrimination.  *See Hawn*, 615 F.3d at 1156 (finding a plaintiff may establish a prima facie case of unlawful discrimination where "similarly situated individuals outside [their] protected class were treated more favorably . . . .").  Wormuth argues that Plaintiff does not allege that he applied for the positions and therefore

United States District Court
Northern District of California

1   these incidents cannot constitute adverse actions.  *See* ECF No. 27 at 18.  Further, according to

2   Wormuth, Plaintiff does not sufficiently allege he is qualified.  *Id.*  The Court finds that Ahmed's

3   allegations are sufficient to infer adverse action and qualification.  First, Plaintiff alleges for the

4   August 16, 2021 position that he was shocked to receive the email because there was no job

5   announcement.  A plaintiff is not required to show that they applied for a position where it was not

6   publicly available.  *See Siam v. Potter*, No. C 04-0129 MHP, 2005 WL 8166268, at *9 (N.D. Cal.

7   May 17, 2005) ("[I]t is well-settled that where openings are not published, or where they are

8   awarded without a competitive application process, 'it would be unreasonable to require plaintiff

9   to present direct evidence of the actual job qualifications as part of his prima facie case' or show

10  that he 'applied' for the job through a formal procedure.") (quoting *Lyons*, 307 F.3d at 1114).  The

11  Court also infers Ahmed was interested in the position based on his allegation that he told Mr.

12  Collins that he would be willing to take any job.  *See* ECF No. 25 ¶ 8(n).  For the August 19, 2021

13  position, Ahmed alleges that he was not interviewed for or offered the job.  *See* ECF No. 25 ¶ 8(s).

14  The Court thus infers that Plaintiff either applied for the position or was not made aware of any

15  application process.  Further, the FAC plausibly alleges that Plaintiff was qualified for the position

16  based on his allegations that he had "14 years' experience at DLI, high DLPT results, high

17  professional performance results . . .," as well as his allegations that the person selected was from

18  the same department as Plaintiff with seven years less experience.  ECF No. 25 ¶¶ 8(c), 8(s).

19          As to Ahmed's other allegations of failure to promote or transfer, however, the Court

20  agrees that Ahmed has not alleged facts giving rise to a plausible inference that he was not

21  promoted or transferred because of his race.  While he does not have to allege that the individuals

22  hired were similarly situated, Ahmed does not allege any facts to infer race discrimination beyond

23  the allegations related to the August 16, 2021 and August 19, 2021 job positions.  *Compare*

24  *Williams v. Wolf*, No. 19-CV-00652-JCS, 2020 WL 1245369, at *10 (N.D. Cal. Mar. 16, 2020)

25  (finding that even though plaintiff did not allege similarly situated individuals, she identified a

26  number of incidents where racially discriminatory motive could be inferred, such as "that she has

27  been singled out for criticism or discipline on a number of occasions for conduct that is common

28  in her office by non-African American employees who have not engaged in protected conduct,

1    including non-work-related conversations, violation of the office dress code, and identifying her

2    education credentials in her email signature . . . .").  Plaintiff's allegations that the interview for

3    the Levantine Team Leader role did not comport with normal protocols might provide support for

4    an allegation that the decision not to hire him was discriminatory, but he does not provide

5    additional allegations related to the interview, that position, or otherwise to make the inference

6    that it was based on race discrimination.  *See Austin v. Univ. of Oregon*, 925 F.3d 1133, 1138 (9th

7    Cir. 2019) ("What is missing for each theory of liability are sufficient, nonconclusory allegations

8    plausibly linking the disciplinary action to discrimination on the basis of sex.").

9            Accordingly, the Court **DENIES** Wormuth's Motion to Dismiss Ahmed's race

10    discrimination claim under Title VII as to the August 16, 2021 and August 19, 2021 job transfers,

11    but otherwise **GRANTS** Wormuth's Motion to Dismiss Ahmed's race discrimination claim.  This

12    is Ahmed's second attempt at alleging race discrimination, and Ahmed does not suggest in his

13    Opposition any additional facts suggesting he might have a plausible claim.  Accordingly, the

14    Court **DENIES** leave to amend.

15                              **b.      Religious Discrimination Claim**

16            For the same reasons detailed above for race discrimination, the Court finds Plaintiff has

17    plausibly alleged a cause of action based on religious discrimination for the August 16, 2021 and

18    August 19, 2021 job transfers.  Plaintiff alleges he is Sunni Muslim.  ECF No. 25 ¶ 6(c).  He

19    alleges that he was subject to adverse action by not being promoted or transferred, that he was

20    qualified for positions, and that others who were either similarly situated or less qualified and not

21    religious obtained those jobs instead of him.  *See* ECF No. 25 ¶ 8(s).  The Court also finds, for the

22    same reasons as his race discrimination claim, that Plaintiff's religious discrimination claim fails

23    to plausibly allege failure to promote or transfer based on religion for the other incidents alleged in

24    the FAC, and thus fails to state a claim as to those incidents.  Just as with allegations of race

25    discrimination, Ahmed does not include any allegations suggesting religious bias or discrimination

26    beyond those pled in relation to the August 16, 2021 and August 19, 2021 job transfers.

27            Accordingly, the Court **DENIES** Wormuth's Motion to Dismiss Ahmed's religious

28    discrimination claim under Title VII as to the August 16, 2021 and August 19, 2021 job transfers,

United States District Court
Northern District of California

1   but otherwise **GRANTS** Wormuth's Motion to Dismiss Ahmed's religious discrimination claim.

2   This is Ahmed's second attempt at alleging discrimination based on religion, and Ahmed does not

3   indicate in his Opposition any additional facts suggesting he might have a plausible claim.

4   Accordingly, the Court **DENIES** leave to amend.

### c.       National Origin Discrimination Claim

6          The Court finds that Plaintiff's discrimination claim based on national origin is

7   insufficiently pled.  Ahmed alleges that he is Egyptian, and he alleges that one of the decision-

8   makers, Dr. Kanbar, is Lebanese.  ECF No. 25 ¶¶ 8(b), 8(d).  Otherwise, he alleges no facts

9   suggesting discrimination based on his national origin.  The Court does not consider the allegation

10  that one of the possible decision-makers is of a different national origin sufficient circumstantial

11  evidence to plausibly understand that Plaintiff was not transferred or promoted because of his

12  national origin.  Ahmed does not allege any other facts to indicate Dr. Kanbar, or anyone else, is

13  biased or discriminated against Ahmed because of their different nationalities.  *See Johnson v.*

14  *Eckstrom*, No. C-11-2052 EMC, 2011 WL 5975039, at *5 (N.D. Cal. Nov. 29, 2011) ("There is no

15  allegation that, e.g., a less qualified person of another race was awarded the promotion over him or

16  that there is a pattern in failing to promote African Americans at HAMC.").

17         Accordingly, the Court **GRANTS** Wormuth's Motion to Dismiss Plaintiff's cause of

18  action under Title VII based on national origin.  This is Ahmed's second attempt at alleging

19  national origin discrimination, and Ahmed does not indicate in his Opposition any additional facts

20  suggesting he might have a plausible claim.  Accordingly, the Court **DENIES** leave to amend.

### 3.      Pleadings Sufficient Facts for Retaliation Claim

22         Wormuth argues that Ahmed's retaliation claim should be dismissed because it does not

23  sufficiently put Wormuth on notice of the elements of the cause of action, and Ahmed does not

24  sufficiently allege protected activity beyond the July 13, 2021 and September 3, 2021 EEO

25  contacts.  ECF No. 27 at 22-24.

26         To state a claim for retaliation under Title VII, a plaintiff must allege he (1) engaged in a

27  protected activity, (2) his employer subjected him to a materially adverse employment action, and

28  (3) a causal link exists between the protected activity and the adverse action.  *Westendorf v. W.*

United States District Court
Northern District of California

1

2

3

4

*Coast Contractors of Nevada, Inc.*, 712 F.3d 417, 421 (9th Cir. 2013) (citations omitted).  An adverse action for a retaliation claim is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotations and citations omitted).

5

6

7

8

9

10

11

First, as with Wormuth's discrimination argument, the Court disagrees that Ahmed's retaliation claims are so vague or unclear such that he cannot make out a cause of action.  The Court previously found that Ahmed's prior complaint failed to include relevant protected activity, and, as pled, it could not determine whether Wormuth's retaliation allegations were timely.  ECF No. 21 at 14-15.  Ahmed now includes dates and details of his activities such that it is clear he has timely pled at least some of the allegations.  The Court declines to dismiss his retaliation claim on the basis that it is unclear.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

As to the elements of the retaliation claim, Wormuth does not dispute that Ahmed engaged in protected activity, namely his EEO complaints on July 13, 2021 and September 3, 2021, but argues that to the extent Ahmed is relying on other allegedly protected activity to plead a retaliation claim, he has not sufficiently alleged that action was protected.  ECF No. 27 at 22-23.  "For an employee's 'opposition' to be protected, the conduct that the employee opposed 'must fairly fall within the protection of Title VII to sustain a claim of unlawful retaliation.'"  *Kurdi v. California Dep't of Transportation*, No. 122CV00729JLTEPG, 2023 WL 267538, at *6 (E.D. Cal. Jan. 18, 2023) (quoting *Learned v. Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988)).  The Court finds at this early stage that Plaintiff's complaints to Mr. Collins on August 13, 2021, August 20, 2021 and August 26, 2021 about violations of the EEOC settlement agreement and that he was being discriminated against are sufficient to suggest he was opposing discrimination along the lines of the discrimination asserted in his July 2021 EEO complaint.  *Compare Learned*, 860 F.2d at 932 (affirming dismissal where plaintiff "did not allege that he ever opposed any discrimination based upon race, color, religion, sex, or national origin" and "could not reasonably have believed that Bellevue discriminated against him in violation of Title VII, and therefore, he cannot claim that he was retaliated against for opposing discrimination prohibited by Title VII.").

28

Wormuth also argues that Ahmed has not sufficiently identified the adverse action

United States District Court
Northern District of California

1   underlying his retaliation claim.  ECF No. 27 at 23-24.  However, Plaintiff refers to multiple

2   incidents after the July 13, 2021 EEOC contact where he was not promoted, as well as alleging

3   that he was not transferred despite requests.  *See, e.g.*, ECF No. 25 ¶ 8(p) (August 4, 2021

4   interview for the Levantine Team Leader position), ¶ 8(s) (August 16, 2021 and August 19, 2021

5   job transfers), ¶ 8(y) (September 10, 2021 conversation with Chairperson of the Egyptian

6   Department that he would recommend him for a position).  These adverse actions, as well as other

7   denials of promotion or transfer, all occurred within a month or two of the EEO complaints.  *See*

8   *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (sufficient evidence existed where

9   adverse actions occurred less than three months after complaint filed, two weeks after charge first

10  investigated, and less than two months after investigation ended).  The Court finds that Plaintiff

11  has adequately alleged adverse action based on failures to promote or transfer.

12         Accordingly, the Court **DENIES** Wormuth's Motion to Dismiss Ahmed's retaliation claim

13  under Title VII based on the protected activity of the July 13, 2021 and September 3, 2021 EEO

14  complaints, as well as Ahmed's complaints to Mr. Collins on August 13, 2021, August 20, 2021

15  and August 26, 2021.  To the extent Ahmed alleges protected activity beyond those incidents, the

16  Court **GRANTS** Wormuth's Motion to Dismiss Ahmed's retaliation claim.  Because the

17  allegations as to the August 30, 2021 meeting are unclear and suggest that it is possible that

18  Ahmed was complaining about discrimination, the Court **GRANTS** leave to amend his retaliation

19  claim.

20         **4.    Punitive and Exemplary Damages**

21         Wormuth argues that Ahmed may not seek punitive damages against the government under

22  Title VII.  ECF No. 27 at 24.  That is correct, *see Garity v. Brennan*, 845 Fed. App'x. 664, 665

23  (9th Cir. 2021), *cert. denied sub nom. Garity v. DeJoy*, 211 L. Ed. 2d 215 (Oct. 18, 2021), and

24  Ahmed agrees.  ECF No. 29 at 22.  Accordingly, the Court **STRIKES** Ahmed's prayer for

25  punitive damages.[7]

26

27  _____

28  [7] Wormuth also argues that Ahmed may not seek punitive damages or emotional distress and pain and suffering damages under the ADEA.  However, that issue is moot as the Court has dismissed the ADEA claim without leave to amend.

1

## V.   CONCLUSION

2

For the reasons stated above, the Court **GRANTS** dismissal of Ahmed's claims as to

3   conduct prior to July 20, 2021; **GRANTS** dismissal of his ADEA claim; **GRANTS** in part and

4   **DENIES** in part dismissal of his race discrimination claim under Title VII; **GRANTS** in part and

5   **DENIES** in part dismissal of his religious discrimination claim under Title VII; **GRANTS**

6   dismissal of his national origin claim under Title VII; **GRANTS** in part and **DENIES** in part

7   dismissal of his retaliation claim under Title VII; and **STRIKES** the prayer for punitive damages.

8   The Court **GRANTS** leave to amend Ahmed's retaliation claim.  Ahmed shall have 30 days from

9   the date of this order to file his amended complaint.

10

**IT IS SO ORDERED.**

11

12   Dated:  June 26, 2023

13

14   THOMAS S. HIXSON
United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California