UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EHAB AHMED,

           Plaintiff,

    v.

CHRISTINE WORMUTH, SECRETARY, DEPARTMENT OF THE ARMY,

           Defendant.

Case No. 22-cv-04365-TSH

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; ORDER REFERRING PARTIES FOR FURTHER SETTLEMENT CONFERENCE**

Re: Dkt. No. 50

## I.  INTRODUCTION

Plaintiff Ehab Ahmed brings this Title VII case alleging discrimination based on his race and religion, as well as retaliation for participating in protected activity.  Pending before the Court is Defendant Christine Wormuth's Motion for Summary Judgment.  ECF No. 50.  Ahmed filed an Opposition (ECF No. 65) and Wormuth filed a Reply (ECF No. 67).  The Court finds this motion suitable for disposition without oral argument and **VACATES** the December 12, 2024 hearing.  *See* Civ. L.R. 7-1(b).  For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.[1]

## II.  BACKGROUND

### A.  Factual Background

Ahmed served as an Associate Professor of the Hebrew Language at the Defense Language Institute ("DLI") in Monterey, California from 2007 through October 1, 2021.  Parties' Stipulated Statement of Facts ("Stip. Stmt. Facts") ¶ 5, ECF No. 51; Sec. Am. Compl. ¶ 8a, 8aa, ECF No. 35.  His native language is Egyptian Arabic, he identifies as "Egyptian, Middle Eastern," and his

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 5, 14.

religion is Muslim.  Stip. Stmt. Facts ¶ 3; Ahmed Depo. at 9:21-10:1, ECF Nos. 53-1, 66.[2]

In December 2020 Ahmed attended a department meeting where it was announced that the Hebrew Department was downsizing.  Sec. Am. Compl. ¶ 8b; Ahmed Decl. ¶ 3, ECF No. 65-3. Ahmed states he was among the teachers initially marked to stay at the DLI during the downsizing, while two senior Hebrew teachers, both having more than ten years with the department, were designated to leave.  Ahmed Decl. ¶¶ 4-5.  As Ahmed knew these colleagues personally and felt it was unjust for them to be let go, he spoke with his Chairperson and Dean in townhalls via Microsoft Teams, expressing his concern with the situation.  *Id.* ¶ 5.  After voicing these concerns, Ahmed states he "was blocked from other job opportunities and target[ed] for termination."  *Id.* ¶ 6.  Ahmed states he applied for at least 12 jobs, "the majority of which I was fully qualified for, in and out of the Arabic department: receiving no interviews."  *Id.* ¶ 13.

In January 2021, Ahmed states he applied to transfer to an Arabic teaching role "in an effort to save at least one of my colleagues' positions."  *Id.* ¶ 7.  He passed tests in two Arabic dialects and met the qualifications for the position, but he was not transferred, nor was he granted an interview for any management roles he applied for.  *Id.*

DLI management subsequently announced on April 2, 2021 that, instead of downsizing, DLI was going to eliminate the entire Hebrew Department the following year.  *Id.* ¶ 8; Sec. Am. Compl. ¶ 8e.  Ahmed was not selected to stay.  Ahmed Decl. ¶ 8.  On April 14 Ahmed was informed that his not-to-exceed date (i.e., the date by which his term-limited employment was scheduled to end) was advanced from October 2, 2021 to July 23, 2021.  Sec. Am. Compl. ¶ 8f.

On April 7, 2021, Ahmed states he met with Associate Provost Dr. Hiam Kanbar, who informed him of a shortage of Levantine dialect Arabic teachers and instructed him to take a proficiency test.  Ahmed Decl. ¶ 9.  Ahmed became a certified Levantine Arabic speaker in May 2021.  *Id.*; Ahmed Depo. at 148:20-25.  However, Ahmed contends "Dr. Kanbar later basically said, 'sorry, we don't need you,' which to me, it was implying she may have hoped I wouldn't pass to justify not transferring me."  Ahmed Decl. ¶ 9.

---

[2] The parties each filed portions of Ahmed's June 26, 2024 deposition.

United States District Court
Northern District of California

In May and June 2021, two Egyptian Team Leader positions opened up. *Id.* ¶ 10. Ahmed reached out to the Arabic school dean, Dr. Viktoriya Shevchenko, and Associate Provost Dr. Hiam Kanbar, requesting he be considered, but he states they denied him the opportunity to compete because the positions were restricted to current Arabic teachers. *Id.*

In the summer of 2021, Bella Kelly was the Dean, LREC Extension Programs, at the DLI Foreign Language Center, stationed at Fort Meade, in Maryland. Kelly Decl. ¶ 2, ECF No. 54. On June 23, 2021, Kelly recommended Avner Even-Zohar for a Continuing Education position teaching Hebrew at Fort Eisenhower (formerly Fort Gordon) in Georgia. *Id.* ¶ 4. Even-Zohar accepted the position. *Id.* ¶ 10. There is no evidence in the record indicating on which date Even-Zohar accepted the position, but Ahmed states he was not transferred until August 2021, as documented by an email he received on August 16, 2021. Ahmed Decl. ¶ 14. Ahmed states the Fort Eisenhower position was never formally announced. *Id.* ¶ 15.

Ahmed contacted an EEO officer on July 13, 2021. Stip. Stmt. Facts ¶ 6. Following mediation with DLI management, he and DLI executed a settlement agreement on or around July 16, 2021, pursuant to which Ahmed's not-to-exceed date was extended to October 2, 2021. Sec. Am. Compl. ¶ 81, 13.

In July 2021[3] Ahmed applied for the position of Assistant Dean of UAA (Chinese School). Ahmed Decl. ¶ 18; Mirzaei Decl. ¶ 2, ECF No. 55. There were 38 applicants. Mirzaei ¶ 5. The resume of each applicant for the position was redacted to remove personally identifying information and each applicant was given an identification number. *Id.* ¶ 6. Ahmed was designated as Applicant 14. *Id.* ¶ 7. Ahmed's redacted resume did not disclose his religion, national origin, race, or prior activity protected by Title VII. *Id.* ¶ 8 & Ex. 1 (Ahmed's resume). However, Ahmed contends his resume (as well as the other 38 applicants' resumes) contained identifiable information, including references to Ain Shams University in Cairo and work history in Egypt, that could reveal his background. Ahmed Depo. at 80:1-82:25. After ranking the candidates based on their resumes, the selection panel interviewed the eight applicants with the

---

[3] Neither party provides the specific date in July, although Ahmed states it was "after he had engaged in protected activity on July 13 and 16." Opp'n at 7.

United States District Court
Northern District of California

highest composite scores.  Mirzaei Decl. ¶¶ 11, 13.  Ahmed received the ninth highest composite score and was not selected for an interview.  *Id.* ¶¶ 12-13 & Ex. 3 (composite scores).  Josh Merl, who was designated as Applicant 23, was selected for the Assistant Dean position.  Stip. Stmt. Fact ¶ 10.

On August 4, 2021, Ahmed was interviewed for a Levantine Team Leader position at DLI. Sec. Am. Compl. ¶ 8n; Estima Decl. ¶ 2, ECF No. 60.  The selection panel for the Levantine Team Leader position had a script of interview questions, and the same questions were posed to each interviewee.  Estima Decl. ¶ 5; Al Thawahrih Decl. ¶ 16, ECF No. 58.  Ahmed contends the interview process was procedurally flawed as questions were asked in Arabic despite nearly half the panel members not speaking Arabic, and because the use of target language questions was unusual for Team Leader positions.  Ahmed Decl. ¶ 22.  Based on composite scores, Ahmed was the third highest ranked interviewee.  Estima Decl. ¶ 8.  The selection panel determined Ahmed "is not a good fit for the position of team leader in the Levantine program."  *Id.* ¶ 9 & Ex. 1.  The panel's recommendation memorandum noted that Ahmed mixed the use of Modern Standard Arabic, Egyptian, and Levantine when he was asked to speak in Levantine during the interview, and that he was not familiar with the Levantine curriculum.  *Id.* ¶¶ 9-10.  The panel recommended Siba Ammari for the position, after which Tatiana McCaw, the Dean of Middle East School II at DLI, selected Ammari for the position.  *Id.* ¶ 12; McCaw Decl. ¶¶ 2, 5-6, ECF No. 63.

Ahmed again contacted an EEO officer on September 3, 2021, alleging further discrimination and noncompliance with the settlement agreement.  Stip. Stmt. Facts ¶ 7; Sec. Am. Compl. ¶ 13.

On or around September 10, 2021, Ahmed and Dr. Hany Amin, the then-head of the Egyptian Department, had a conversation in which Dr. Amin told Ahmed he would be a good fit for an Egyptian testing project position and that the Egyptian Department had a need for such a position.  Amin Decl. ¶ 2-3, ECF No. 64.  Although an Egyptian testing project position did not exist, Dr. Amin felt there was a need for it and that DLI first had to fund the position.  *Id.* ¶ 4. Ahmed contends Dr. Amin advised him that no additional funding would be required as he would perform dual roles within a single salary.  Ahmed Decl. ¶¶ 23, 25-27.  Dr. Amin states he reached

out to DLI management to see if DLI would fund an Egyptian testing project position within the Egyptian Department but was informed there was no funding available. Amin Decl. ¶ 5. Ahmed states Dr. Amin never received explicit funding denial. Ahmed Decl. ¶ 27.

**B.    Procedural Background**

On July 28, 2022, Ahmed filed his initial complaint, alleging discrimination based on race, religion, national origin, age, and association with religion pursuant to Title VII of the Civil Rights Act of 1964. ECF No. 1. Ahmed also alleged retaliation for voicing concerns. *Id.* On December 16, 2022, Wormuth filed a motion to dismiss pursuant to Rule 12(b)(6), ECF No. 12, which the Court granted on February 28, 2023, ECF No. 21; *Ahmed v. Wormuth*, 2023 WL 2309776 (N.D. Cal. Feb. 28, 2023).

On April 28, 2023, Ahmed filed a First Amended Complaint raising the following causes of action: (1) Title VII discrimination based on race; (2) Title VII discrimination based on national origin; (3) Title VII discrimination based on religion; (4) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); and (5) retaliation under Title VII. ECF No. 25. Wormuth again moved for dismissal. ECF No. 27. On June 26, 2023, the Court granted in part and denied in part Wormuth's motion. ECF No. 32; *Ahmed v. Wormuth*, 2023 WL 4205765 (N.D. Cal. June 26, 2023). Specifically, the Court granted dismissal of Ahmed's claims as to any conduct prior to July 20, 2021, granted dismissal of his ADEA claim and Title VII national origin discrimination claims without leave to amend, restricted Ahmed's Title VII race and religion discrimination claims to his non-selections for the Hebrew teaching position at Fort Eisenhower and the Assistant Dean of UAA position, and allowed Ahmed to pursue Title VII retaliation claims based on employment actions occurring on or after July 20, 2021.

On July 26, 2023, Ahmed filed the operative Second Amended Complaint, alleging three claims under Title VII: (1) discrimination based on race; (2) discrimination based on religion; and (3) retaliation.

Wormuth filed the present motion on November 6, 2024.

United States District Court
Northern District of California

### III. LEGAL STANDARD

Summary judgment is proper where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that may affect the outcome of the case, and a dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 250. All reasonable inferences must be drawn in the light most favorable to the nonmoving party. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). However, it is not the task of the Court "'to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden "to identify with reasonable particularity the evidence that precludes summary judgment." *Id.*; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) (The nonmoving party "must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations.") (citations omitted). Thus, "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *Christian Legal Soc. Chapter of Univ. of Cal. v. Wu*, 626 F.3d 483, 488 (9th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in briefs.") (citations omitted).

"While the evidence presented at the summary judgment stage does not yet need to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through admissible evidence." *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (citing Fed. R. Civ. P. 56(c) ("An affidavit or declaration used to support or oppose a motion must

be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.")).  If the nonmoving party fails to identify such evidence, or if it offers evidence that is "merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson,* 477 U.S. at 249–50 (citations omitted).

## IV.    DISCUSSION

As a result of the Court's previous orders, the claims remaining in this case relate to the Fort Eisenhower position (raising claims for race and religion discrimination and retaliation), the Assistant Dean of UAA position (raising claims for race and religion discrimination and retaliation), the Levantine Team Leader position (raising a claim for retaliation only), and the Egyptian testing project position (raising a claim for retaliation only).  Wormuth seeks an order granting summary judgment as to all remaining claims.

### A.    Title VII Framework

#### 1.    Discrimination

Title VII forbids discrimination by employers based on an individual's race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2.  The Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), established a three-stage burden-shifting test for evaluating claims of discrimination.  Under this test, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination.  *Id.* at 802.  "To make out a prima facie case under *McDonnell Douglas*, a plaintiff must show that (1) [he] belongs to a protected class; (2) [he] applied for and was qualified for the position [he] was denied; (3) [he] was rejected despite her qualifications; and (4) the employer filled the position with an employee not of plaintiff's class, or continued to consider other applicants whose qualifications were comparable to plaintiff's after rejecting plaintiff."  *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005).  "The requisite degree of proof necessary to establish a *prima facie* case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence."  *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994), *as amended on denial of reh'g* (July 14, 1994) (citation omitted); *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225

United States District Court
Northern District of California

F.3d 1115, 1124 (9th Cir. 2000).  As to qualifications, Plaintiff must "present[] sufficient evidence from which the trier of fact could reasonably infer that [he] possessed the 'minimum qualifications' for the positions, . . . or that [his] qualifications were comparable with those of the persons awarded the positions."  *Lyons v. England*, 307 F.3d 1092, 1113–14 (9th Cir. 2002) (quoting *Laborde v. Regents of the Univ. of California,* 686 F.2d 715, 717 (9th Cir. 1982)).

Once the prima facie case is established, the employer must then offer a legitimate, nondiscriminatory reason for the adverse employment decision.  *McDonnell Douglas*, 411 U.S. at 802.  Although the burden of production shifts to the defendant at this point, the burden of proof remains with the plaintiff at all times.  *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981).

Finally, if the employer offers a legitimate, nondiscriminatory reason, the plaintiff must then prove that the employer's proffered reason was pretextual.  *McDonnell Douglas*, 411 U.S. at 804.  To defeat summary judgment with a showing of pretext, a plaintiff can "show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence."  *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003), *as amended* (Jan. 2, 2004).  In addition, a showing that a defendant treated similarly situated employees outside plaintiff's protected class more favorably would be probative of pretext.  *Id.*

### 2.    Retaliation

"Section 704 of Title VII prohibits retaliation against an employee for opposing unlawful discrimination."  *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004).  Retaliation claims under Title VII are also assessed under the *McDonnell Douglas* burden-shifting framework.  *Id.*  "To establish a prima facie case of retaliation under Title VII, [Plaintiff] must show 1) that he acted to protect his Title VII rights; 2) that an adverse employment action was thereafter taken against him; and 3) that a causal link existed between the two events."  *Id.*

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.    Hebrew Teaching Position at Fort Eisenhower, Georgia**

      **1.    Discrimination**

            **a.    Prima Facie Case**

Wormuth first argues Ahmed cannot establish a prima facie discrimination claim regarding his non-selection for the position at Fort Eisenhower "because there is no evidence that Kelly was aware of Plaintiff's existence (let alone Plaintiff's race or religion) when she recommended a different person (Even-Zohar) for that position." Mot. at 9. Wormuth provides a declaration from Kelly stating that, on June 23, 2021—when she recommended Even-Zohar for the Continuing Education position—she did not know Ahmed and was not aware he existed. Kelly Decl. ¶ 6. In contrast, Kelly states she was familiar with Avner Even-Zohar because Even-Zohar previously applied for a position in Germany, and Kelly remembered exchanging emails with Even-Zohar about that position. *Id.* ¶ 3.

A plaintiff fails to establish a prima facie discrimination claim where "there is no showing by direct or indirect evidence that the decision-maker knew" about the plaintiff's protected characteristics. *Robinson v. Adams*, 847 F.2d 1315, 1316 (9th Cir. 1987); *see also Stewart v. Wilkie*, 855 F. App'x 394, 394-95 (9th Cir. 2021) (affirming grant of summary judgment where the defendant "submitted numerous, uncontroverted declarations that [the plaintiff's] age was redacted and that no one on the ranking panel was aware of [the plaintiff's] age"); *Raytheon Co. v. Hernandez*, 540 U.S. 44, 54 n.7 (2003) ("If [the decision-maker] were truly unaware that such a disability existed, it would be impossible for her hiring decision to have been based, even in part, on respondent's disability."); *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 82 (2d Cir. 2005) ("a defendant's discriminatory intent cannot be inferred, even at the prima facie stage, from circumstances unknown to the defendant"); *Wong v. Wells Fargo Bank, N.A.*, 2021 WL 4243398, at *7 (N.D. Cal. Sept. 17, 2021) ("[T]he Court finds that as a matter of law, plaintiff cannot make a prima facie case where a decision-maker is unaware of the basis for the alleged discrimination"); *Hsiung v. Walt Disney Co.*, 2020 WL 7379145, at *6 (C.D. Cal. Aug. 19, 2020) (same); *Hamm v. U.S. Dep't of Homeland Sec.*, 2020 WL 6562245, at *3 (C.D. Cal. Sept. 9, 2020) ("A plaintiff fails to establish a prima facie Title VII race discrimination claim if he demonstrates that he belongs to

1    a protected class, but there is no showing by direct or indirect evidence that the decision-maker

2    knew this fact") (citation and quotation marks omitted).

3              Instead of introducing admissible evidence demonstrating a genuine issue of fact as to

4    whether Kelly was aware of his race, religion, and/or prior protected activity status, Ahmed

5    submits a separate statement of facts lodging the following objections to Kelly's sworn

6    declaration: "lacks foundation, lacks personal knowledge, hearsay, assumes facts not in evidence,

7    calls for speculation[.]" ECF No. 65-2 ¶¶ 13-16.  Ahmed does not explain the legal or factual

8    bases for these evidentiary objections.  However, it is clear that Kelly has personal knowledge

9    about her own knowledge, and she can testify to these facts.  *See* Fed. R. Evid. 602.  Additionally,

10   Kelly's sworn testimony does not involve hearsay, but even if it did, that is not a valid objection in

11   these summary judgment proceedings because Kelly could testify to these facts at trial.  *JL*

12   *Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) ("at summary

13   judgment a district court may consider hearsay evidence submitted in an inadmissible form, so

14   long as the underlying evidence could be provided in an admissible form at trial, such as by live

15   testimony").  Ahmed also does not explain his "assumes facts not in evidence" and "calls for

16   speculation" objections, but, again, Kelly is capable of testifying regarding her own knowledge on

17   these topics.

18             Ahmed's separate statement of facts also contends that other DLI employees were aware of

19   his protected characteristics and/or that DLI's official records contained that information (ECF

20   No. 65-2 ¶¶ 13-16), but those assertions do not call into question Kelly's sworn testimony that

21   Kelly lacked knowledge of Ahmed's protected characteristics.  Kelly was stationed at Fort Meade,

22   in Maryland (Kelly Decl. ¶ 2), and Ahmed was based in Monterey, California (Stip. Stmt. Facts ¶

23   5).  There is no evidence that Kelly and Ahmed ever interacted and/or that Kelly was generally

24   aware of the official records of all DLI employees.  Ahmed bears the burden of identifying

25   evidence showing that the decisionmaker was aware of his protected characteristics; here, that

26   evidence is absent.

27             As Ahmed sets forth no evidence rebutting Kelly's testimony that she was unaware of his

28   protected status (and was unaware of Ahmed), the Court finds he has not raised a genuine issue of

United States District Court
Northern District of California

material fact and has failed to establish a prima facie case of discrimination. As such, summary judgment is appropriate in Wormuth's favor. However, even if Ahmed could establish a prima facie case, he fails to produce sufficient evidence to raise a genuine issue of material fact as to whether Wormuth's proffered nondiscriminatory reason is merely a pretext for discrimination.

### b. Legitimate, Nondiscriminatory Reason

Once a plaintiff has established a prima facie case, "the burden shifts to the defendant to articulate a 'legitimate, nondiscriminatory reason' for its action." *Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 1002 (9th Cir. 2019) (quoting *McDonnell Douglas*, 411 U.S. at 802). Assuming Ahmed could establish a prima facie case, Wormuth has provided evidence that Ahmed was not transferred to teach Hebrew at Fort Eisenhower because Kelly was not aware Ahmed existed and was not aware he was seeking a transfer from DLI's Hebrew Department. Kelly Decl. ¶¶ 6, 9; *see also Cobain v. Destination Hotels & Resorts*, 2007 WL 1589533, at *11 (E.D. Cal. June 1, 2007) (finding that employer's lack of awareness that the plaintiff had applied for the position is a legitimate, nondiscriminatory reason for non-selection), *distinguished on other grounds by Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770 (9th Cir. 2010).

### c. Pretext

If the employer articulates a legitimate, nondiscriminatory reason for its action, "the presumption of unlawful discrimination 'simply drops out of the picture.'" *Dominguez-Curry*, 424 F.3d at 1037 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). "The plaintiff then must produce sufficient evidence to raise a genuine issue of material fact as to whether the employer's proffered nondiscriminatory reason is merely a pretext for discrimination." *Id.* (citing *Coleman v. Quaker Oats Co*., 232 F.3d 1271, 1282 (9th Cir. 2000)). Ahmed must introduce "specific and significantly probative" evidence that Wormuth's proffered reasons are pretextual. *Schuler v. Chronical Broad. Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986). "A plaintiff may meet the burden to show pretext using either direct or circumstantial evidence." *Coghlan v. Am. Seafoods Co. LLC.*, 413 F.3d 1090, 1094–95 (9th Cir. 2005). Circumstantial evidence can be utilized affirmatively to make a case that an employer is biased, such as through statistical evidence, or it can be used negatively, such as by showing that an employer's

11

explanation is unworthy of credence. *Id*. at 1095.

Ahmed first argues there was a "timing discrepancy" because Kelly recommended Even-Zohar for the position on June 23, 2021, but "the transfer wasn't processed until August 15, 2021." Opp'n at 11; Ahmed Decl. ¶ 14 ("In August 2021, DLI transferred Avner Even-Zohar, who is Jewish and Israeli, to a Continuing Education position at Fort Eisenhower, as documented by and through an email I received on August 16, 2021, while Acting Chair of the Hebrew Department in the absence of Chairperson Eyal."). However, there is no evidence that transfers are processed the same day a recommendation is made, and Ahmed introduces no evidence to suggest the approximately two-month interval between the recommendation and the transfer makes Wormuth's explanation "unworthy of credence because it is internally inconsistent or otherwise unbelievable[.]" *Chuang*, 225 F.3d at 1127. Ahmed thus fails to explain why the time at issue is evidence of pretext.

Ahmed also argues "DLI management chose to rescue Even-Zohar, their Jewish teacher, while allowing Plaintiff, an Arab Muslim to lose his position and become employed." Opp'n at 12. This assertion is unsupported by evidence and therefore cannot create a genuine dispute of fact to defeat summary judgment. *See* Fed. R. Civ. P. 56(c)(1). In any event, it does not rise to the level of "specific and significantly probative" evidence that Wormuth's proffered reasons for Kelly's conduct are pretextual. *Schuler*, 793 F.2d at 1011. Indeed, there is no evidence that anyone in "DLI management" was involved in Kelly's recommendation of Even-Zohar for the position, much less that they intentionally "chose to rescue" Even-Zohar rather than Ahmed or that they did so based on Ahmed's religion. Such "subjective personal judgments do not raise a genuine issue of material fact." *Id.* (citing *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980)).

Ahmed next argues the Fort Eisenhower position "was never publicly announced, thereby deviating from standard DLI procedures." Opp'n at 12. However, he does not provide any evidence establishing what "standard DLI procedures" are, nor does he show those "standard DLI procedures" would have applied to the Fort Eisenhower position. This is not specific and probative evidence demonstrating that Wormuth's nondiscriminatory and nonretaliatory reasons (i.e., Kelly did not know Ahmed existed and thus had no basis to recommend him for the position)

1  were pretextual.

2              **d.      Summary**

3        In sum, Ahmed has failed to establish a prima facie case of discrimination because he has

4  not introduced any evidence to contradict the sworn testimony that Kelly was unaware of his

5  existence, let alone his race or religion, when she recommended Even-Zohar for the position.

6  Even if Ahmed could establish a prima facie case, he has failed to produce specific and

7  significantly probative evidence demonstrating that Kelly's reason for recommending Even-Zohar

8  for the position was pretextual.  Accordingly, the Court **GRANTS** Wormuth's motion as to

9  Ahmed's Title VII discrimination claim based on the Hebrew teaching position at Fort

10 Eisenhower.

11         **2.      Retaliation**

12        Wormuth next argues Ahmed cannot establish a prima facie Title VII retaliation claim with

13 respect to the Fort Eisenhower position because Kelly recommended Even-Zohar before he

14 engaged in activity protected by Title VII.  Mot. at 11.  "An alleged adverse action which predates

15 the alleged protected activity cannot serve as the basis for a retaliation claim."  *Brown v. Jewell*,

16 2017 WL 772140, at *2 (E.D. Cal. Feb. 28, 2017), *aff'd sub nom. Brown v. Zinke*, 741 F. App'x

17 413 (9th Cir. 2018); *see also Alhozbur v. McHugh*, 2011 WL 13243131, at *8 (N.D. Cal. July 21,

18 2011) ("Retaliation cannot be shown where the protected activity took place after the alleged

19 retaliatory action had already been set in motion"); *Castillo v. Dominguez*, 120 F. App'x 54, 57

20 (9th Cir. 2005) (a plaintiff must show "that []he acted to protect h[is] Title VII rights, that an

21 adverse employment action was thereafter taken against h[im], and that a causal link exists

22 between those two events.") (citation and quotation marks omitted).

23        Ahmed first engaged in protected activity when he contacted an EEO counselor on July 13,

24 2021.  Stip. Stmt. Fact ¶ 6; *see also Ahmed*, 2023 WL 4205765, at *12 (listing qualifying

25 protected activity, all of which occurred on or after July 13, 2021).  That protected activity

26 postdates Kelly's June 23, 2021 recommendation of Even-Zohar for the Fort Eisenhower position.

27 As such, Kelly's recommendation could not have been in retaliation for Ahmed's protected

28 activity; that protected activity had not yet occurred.  *Brown*, 2017 WL 772140, at *2; *Alhozbur*,

United States District Court
Northern District of California

13

1    2011 WL 13243131, at *8; *Castillo*, 120 F. App'x at 57.

2         Ahmed argues he engaged in protected activity in December 2020 when he spoke with his

3    Chairperson and Dean regarding his concerns about the downsizing situation.  Opp'n at 11.

4    However, Ahmed still introduces no evidence that Kelly was aware of any activity in which he

5    might have engaged in December 2020, and Kelly's sworn declaration establishes that she was not

6    aware of any such activity.  Kelly Decl. ¶ 5.  Ahmed cannot demonstrate a prima facie retaliation

7    claim without evidence demonstrating that knowledge.  *See Cohen v. Fred Meyer, Inc.*, 686 F.2d

8    793, 797 (9th Cir. 1982); *Perez v. McDonough*, 2024 WL 4844383, at *7 (N.D. Cal. Nov. 20,

9    2024) (dismissing Title VII claim where plaintiff failed to show decisionmaker was aware of her

10   EEO activity).  Further, Ahmed does not introduce evidence demonstrating that his purported

11   conduct in December 2020 qualifies as protected activity, much less that the activity was protected

12   by Title VII, which is the only employment discrimination statute at issue in his complaint.  *See*

13   *McCarthy v. Brennan*, 2016 WL 946099, at *12 (N.D. Cal. Mar. 14, 2016) (a retaliation claim

14   must be brought "under the statute under which [plaintiff] alleged the protected activity").  Indeed,

15   Ahmed's declaration contends that in December 2020 he reported "concerns regarding retention of

16   less experienced teachers," Ahmed Decl. ¶ 6, but he does not claim that his stated concerns

17   involved an allegation that DLI was engaging in unlawful discrimination against more experienced

18   teachers based on their race, religion, national origin, sex, gender, age, prior protected activity

19   status, or any other legally protected characteristic.  Without more, voicing concerns about

20   retaining less experienced teachers is not an activity protected by federal employment

21   discrimination statutes.  *See de la Cruz v. Brenna*n, 2020 WL 1233886, at *8 (N.D. Cal. Mar. 13,

22   2020).  Regardless, even if the Court were to consider the December 2020 discussion as protected

23   activity, the six to seven months between it and Kelly's June 23, 2021 recommendation of Even-

24   Zohar is not sufficiently proximate to support a retaliatory causal inference as a matter of law.  *See*

25   *Clark Cnty. School Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (holding that the time between

26   the allegedly retaliatory act and the protected activity must be "very close" and citing cases

27   holding that intervals of three and four months are not sufficiently proximate); *Garcia v. City of*

28   *Everett*, 728 F. App'x 624, 628 (9th Cir. 2018) ("Courts have held 'very close' temporal proximity

United States District Court
Northern District of California

14

1  to mean that 1.5 months is sufficient whereas three and four months is too long"); *Anderson v.*

2  *City & Cnty. of San Francisco*, 169 F. Supp. 3d 995, 1028 (N.D. Cal. 2016) ("Other courts within

3  this Circuit have found that the temporal proximity of seven months, standing alone, is insufficient

4  to support an inference of retaliatory motive.") (collecting cases).

5        Even if Ahmed could establish a prima facie case, as discussed above, he fails to identify

6  specific and significantly probative evidence that Wormuth's proffered reasons for his non-

7  selection are pretextual.  He introduces no evidence to suggest the approximately two-month

8  interval between Kelly's recommendation and Even-Zohar's transfer makes Wormuth's

9  explanation unworthy of credence, there is no evidence anyone involved "chose to rescue" Even-

10  Zohar rather than Ahmed or that they did so based on of his religion, and even if Ahmed's

11  December 2020 activity is considered protected activity, a six to seven month period between a

12  purported protected activity and an employment action cannot create a triable issue of pretext.  *See*

13  *Kama v. Mayorkas*, 107 F.4th 1054, 1060 (9th Cir. 2024) ("Even cases involving very close

14  temporal proximity have generally featured independent evidence of discrimination or

15  retaliation.").  Accordingly, the Court **GRANTS** Wormuth's motion as to Ahmed's Title VII

16  retaliation claim based on the Hebrew teaching position at Fort Eisenhower.

**C.**    **Assistant Dean of UAA (Chinese School)**

      **1.**    **Discrimination**

          **a.**    **Prima Facie Case**

20        Wormuth next argues Ahmed cannot establish a prima facie discrimination claim with

21  respect to the Assistant Dean of UAA position because there is no evidence that any panel member

22  was aware of his race or religion.  Mot. at 13.

23        The selection panel for the Assistant Dean position was comprised of Dr. Atousa Mirzaei,

24  Zachary Jankowski, Dr. Farooq Babrakzai, Jamil Al Thawahrih, and Tatyana Neronova.  Mirzaei

25  Decl. ¶ 3.  The 38 applicants' resumes were redacted to remove personally identifying

26  information, with each applicant given an identification number.  *Id.* ¶¶ 5-6.  Ahmed was

27  designated as Applicant 14.  *Id.* ¶ 7.  Ahmed's redacted resume did not disclose his religion,

28  national origin, race, or prior activity protected by Title VII.  *Id.* ¶ 8 & Ex. 1.  After ranking the

United States District Court
Northern District of California

1    candidates based on their resumes, the selection panel interviewed the eight applicants with the

2    highest composite scores.  *Id.* ¶¶ 11, 13.  Ahmed received the ninth highest composite score and

3    was not selected for an interview.  *Id.* ¶¶ 12-13 & Ex. 3 (composite scores).  Wormuth has

4    presented declarations from each of the panel members attesting that they were not aware that

5    Applicant 14 referred to Ahmed, nor were they aware of his race, national origin, or religion, or

6    that he previously engaged in Title VII protected activity.  *Id.* ¶¶ 8, 15-19; Jankowski Decl. ¶¶ 7-

7    11, ECF No. 56; Babrakzai Decl. ¶¶ 7-11, ECF No. 57; Al Thawahrih Decl. ¶¶ 6-10, Neronova

8    Decl. ¶¶ 6-10, ECF No. 59.

9         When a decisionmaker is unaware that a plaintiff is a member of a protected class, there

10   can be no prima case of discrimination under Title VII.  *See White v. Wilson*, 2018 WL 6175385,

11   at *4 (C.D. Cal. Mar. 23, 2018), *aff'd sub nom. White v. Barrett*, 812 F. App'x 629 (9th Cir. 2020)

12   ("It is undisputed that Plaintiff is a member of protected classes under Title VII . . . .  However, it

13   is also undisputed that neither the FMS or FAS selecting official knew of Plaintiff's race, color,

14   sex, or age at the time of the selection.  This precludes Plaintiff from stating a prima facie case

15   under either Title VII or the ADEA."); *Robinson*, 847 F.2d at 1316-17 (finding no genuine dispute

16   as to whether application screeners were aware of plaintiff's race, even though plaintiff produced

17   evidence that he checked a box indicating his race on all four of his applications, because this

18   information was not disclosed to the screeners, the screeners declared they were unaware of

19   plaintiff's race, and plaintiff failed to produce evidence that placed their credibility in doubt);

20   *Woodman*, 411 F.3d at 81–83 (holding that an ADEA claim failed at the prima facie stage where

21   the plaintiff failed to adduce evidence of the decision-maker's knowledge of the relative ages of

22   the plaintiff and her replacement); *Stewart v. Wilkie*, 2020 WL 362630, at *5 (C.D. Cal. Jan. 22,

23   2020), *aff'd*, 855 F. App'x 394 (9th Cir. 2021) ("[N]othing indicates that any ranking panel

24   member knew Stewart personally such that they could have known his age.  Also, no interview

25   occurred because Stewart did not advance to the interview step, so no reviewer could have inferred

26   age from appearance.  Thus, when Stewart was eliminated from the application process at the

27   second step, none of the panel members could have considered his age as a factor in their decision-

28   making process.  This precludes Stewart from stating a prima facie case under the ADEA.");

United States District Court
Northern District of California

*Raytheon*, 540 U.S. at 54 n.7 ("If [the employer] were truly unaware that . . . a disability existed, it would be impossible for her hiring decision to have been based, even in part, on [the employee's] disability.  And, if no part of the hiring decision turned on [the employee's] status as disabled, he cannot, ipso facto, have been subject to disparate treatment.")).

Ahmed disputes whether the panel members knew he was a member of a protected class. Although personally identifying information was removed from the applicants' resumes, Ahmed argues the applications still "contained identifiable cultural markers that could reveal candidates' backgrounds and give hints as to their identities."[4]  Opp'n at 12.  Ahmed has presented evidence that the pool of applicants who could be from the Hebrew Department was "maybe seven or eight teachers," making it possible by the process of elimination to determine which application belonged to which applicant; that his application included mention of colleagues at the Hebrew Department with whom he worked; and that his application included the location of his former jobs.  Ahmed Depo. at 80:1-18; 82:6-25.

At the prima facie stage, a plaintiff's burden "is 'minimal and does not even need to rise to the level of a preponderance of the evidence.'"  *Dominguez-Curry*, 424 F.3d at 1037 (quoting Lyons, 307 F.3d at 1112).  As such, the Ninth Circuit has instructed that district courts must be cautious in granting summary judgment for employers on discrimination claims.  *See Lam v. Univ. of Hawai'i*, 40 F.3d 1551, 1564 (9th Cir. 1994) ("'We require very little evidence to survive summary judgment' in a discrimination case, 'because the ultimate question is one that can only be resolved through a "searching inquiry"—one that is most appropriately conducted by the factfinder.'") (quoting *Severe Negative TreatmentSischo–Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1111 (9th Cir. 1991)).  From the evidence presented, it is possible that one or more panel members could have been aware of Ahmed's protected status, and the question of whether they were is more appropriately left for the jury to decide.  Thus, as Wormuth does not otherwise argue that Ahmed is unable to make out a prima facie case under *McDonnell Douglas*, the Court

---

[4] Ahmed again lodges in his separate statement of facts evidentiary objections to the panel members' sworn testimony about their own lack of knowledge.  ECF No. 65-2 ¶¶ 27, 36-40, 44-48, 52-56, 60-64, 68-72.  For the same reasons discussed above with respect to his objections to Kelly's sworn declaration, these evidentiary objections are unavailing.

United States District Court
Northern District of California

1    finds Ahmed has established a prima facie case.

2                    **b.    Legitimate, Nondiscriminatory Reason**

3            As Ahmed can establish a prima facie case, Wormuth must provide evidence that the

4    selection panel chose to interview only the eight highest scoring applicants from their review of

5    candidates, and Ahmed was the ninth highest-ranked applicant.  Mirzaei Decl. ¶¶ 12-13 & Ex. 3.

6    The panel members' decision to interview candidates they deemed better qualified is a legitimate,

7    non-discriminatory for Ahmed's non-selection.  *See Dominguez-Curry*, 424 F.3d at 1037

8    (employer's decision to choose more qualified candidate is a legitimate non-discriminatory

9    reason); *Hines v. Cal. Pub. Util. Comm'n*, 2010 WL 2985536, at *6 (N.D. Cal. July 27, 2010),

10   *aff'd*, 467 F. App'x 639 (9th Cir. 2012) (employer's evidence that plaintiff was not promoted

11   because the other candidates were more qualified is nondiscriminatory reason); *Tam v. Potter*,

12   2008 WL 2811989, at *4 (N.D. Cal. July 21, 2008) (employer's reason that other applicants were

13   deemed better qualified for promotion based on two-stage evaluation satisfied burden).

14                   **c.    Pretext**

15           Ahmed offers two reasons Wormuth's proffered reason is a pretext for discrimination.

16   First, as discussed above, Ahmed has presented evidence that the applications contained

17   identifiable cultural markers that could reveal candidates' backgrounds and give hints as to their

18   identities.  Ahmed Depo. at 80:1-18; 82:6-25.  Second, Ahmed contends the top 10 applicants'

19   scores were extremely close to one another, making the decision to interview the top eight

20   candidates seem arbitrary and capricious.  Ahmed Decl. ¶ 19.  Drawing all reasonable inferences

21   in favor of Ahmed, as it must do at this stage, *see Raad v. Fairbanks N. Star Borough Sch. Dist.*,

22   323 F.3d 1185, 1194 (9th Cir. 2003), the Court finds he has created a triable question of fact.

23   From the evidence presented, it is possible that the selection panel could infer Ahmed's race and

24   nationality from his redacted resume, and when that is combined with the fact they drew the line

25   right before him (between the eighth and ninth ranked candidates), when these candidates were

26   only 20 points apart, he has a triable showing that their stated reason is unworthy of credence.

27   "The circumstances surrounding each of these questions involve factual disputes that should not

28   [be] resolved at summary judgment by the district court's weighing of the evidence."  *Raad*, 323

United States District Court
Northern District of California

F.3d at 1195; *see Curley v. City of N. Las Vegas*, 772 F.3d 629, 633 n.3 (9th Cir. 2014) (collecting cases where an employee defeated summary judgment without discrediting all of the employer's stated reasons, such as where an "employer offers a plethora of reasons, and the plaintiff raises substantial doubt about a number of them."); *Chuang*, 225 F.3d at 1127 ("[A] disparate treatment plaintiff can survive summary judgment without producing any evidence of discrimination beyond that constituting his prima facie case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons.").

### d.    Summary

In sum, the Court finds Ahmed has presented evidence that the panel members' decision not to interview him was pretext for discrimination, and summary judgment is therefore improper. Accordingly, the Court **DENIES** Wormuth's motion as to Ahmed's Title VII discrimination claim based on the Assistant Dean of UAA position.

### 2.    Retaliation

Wormuth argues Ahmed's retaliation claim for the Assistant Dean position fails at the prima facie stage because the selection panel members were not aware of his prior protected activity. Mot. at 14. The panel members have each submitted declarations stating they were not aware that Applicant 14 (Ahmed) had previously engaged in activity protected by Title VII, and that information is not included in Ahmed's resume. Mirzaei Decl. ¶¶ 8, 19; Jankowski Decl. ¶ 11, Babrakzai Decl. ¶ 11; Al Thawahrih Decl. ¶ 10, Neronova Decl. ¶ 10. A plaintiff cannot establish a prima facie retaliation claim where the decisionmaker lacks knowledge of the prior protected activity. *See, e.g., Cohen*, 686 F.2d at 797 ("[A]t the time Reynolds made the decision that directly resulted in the adverse action against Bires, he did not know that she had engaged in a protected activity. This breaks the requisite causal link between the decision to implement the policies and Bires' EEOC complaint."); *Velez v. VA*, 2022 WL 1759597, at *6 (N.D. Cal. May 3, 2022) ("Associate Director Graham could not have possibly decided to remove Plaintiff's Site Manager role in retaliation for her EEO activities when he did not know of those activities"); *Adams v. Kmart Corp.*, 2001 WL 969049, at *4 (N.D. Cal. Aug. 10, 2001) ("In retaliation claims brought under Title VII and the FEHA, however, both the Ninth Circuit and California courts have

held that the decisionmaker's knowledge of the protected activity is an essential element."); *Chew v. City & Cnty. of San Francisco*, 2016 WL 631924, at *15 (N.D. Cal. Feb. 17, 2016), *aff'd*, 714 F. App'x 687 (9th Cir. 2017) ("employment decisions made when the decision-maker did not know that the affected employee had engaged in protected activity cannot be causally linked to such activity").

In response to Wormuth's evidence, Ahmed raises the same argument he makes for his discrimination claim: the redacted applications contained identifiable "cultural markers" that could reveal candidates' backgrounds and give hints as to their identities. Ahmed Depo. at 80:1-18; 82:6-25. However, even if these characteristics could be inferred from the resume, Ahmed presents no evidence that undermines the panel members' sworn testimony that his resume does not reveal his protected activity. *See Stewart*, 855 F. App'x at 394-95; *Robinson*, 847 F.2d at 1317. As such, because there is no evidence that the panel members were aware of Ahmed's protected activity, the Court finds he cannot establish a retaliation claim. Accordingly, the Court **GRANTS** Wormuth's motion as to Ahmed's Title VII retaliation claim based on the Assistant Dean of UAA position.

### D.  Levantine Team Leader Position

#### 1.  Prima Facie Case

Wormuth argues Ahmed's retaliation claim for the Levantine Team Leader position fails because the four selection panel members were not aware of his protected activity when they recommended Siba Ammari for the position.[5] Mot. at 16. The selection panel was comprised of Dr. Sonia Estima, SSgt Spencer Rogers, Jamil Al Thawahrih, and Mais Ghanem. Estima Decl. ¶ 3. Each submitted declarations stating they were not aware that Ahmed had previously engaged in activity protected by Title VII. Estima Decl. ¶ 16; Rogers Decl. ¶ 6, ECF No. 61; Al Thawahrih Decl. ¶ 19; Oliva Decl. ¶ 6. And Dean McCaw, the decisionmaker who selected Ammari was also unaware of Ahmed's protected activity. McCaw Decl. ¶ 7. A plaintiff cannot establish a prima facie retaliation claim where the decisionmaker lacks knowledge of the prior protected activity.

---

[5] The Court previously dismissed Ahmed's discrimination claims premised on the Levantine Team Leader position. *Ahmed*, 2023 WL 4205765, at *10-11.

United States District Court
Northern District of California

*Cohen*, 686 F.2d at 797; *Velez*, 2022 WL 1759597, at *6; *Adams*, 2001 WL 969049, at *4.

In his separate statement of facts (but not the Opposition), Ahmed argues: (1) "Al Thawahrih was on multiple interview panels and would have been aware of protected activity within the department," ECF No. 65-2 ¶ 94; (2) his protected activity "was known within the small department,"[6] *id*. ¶¶ 93, 95; and (3) he had, in fact, engaged in prior protected activity, *id*. ¶¶ 92, 97.[7]  However, Ahmed offers no declarations or testimony from the individuals involved in the Levantine Team Leader selection process, and his speculative beliefs about what they might have known cannot create a genuine dispute of material fact, especially where each of those individuals submitted a sworn declaration establishing that they were not aware of Ahmed's protected activity.

Accordingly, the Court finds Ahmed has failed to establish a prima facie case of retaliation, and summary judgment is appropriate in Wormuth's favor.  However, even if Ahmed could establish a prima facie case, he fails to produce sufficient evidence to raise a genuine issue of material fact as to whether Wormuth's proffered nondiscriminatory reason is merely a pretext for retaliation.

### 2.    Legitimate, Nondiscriminatory Reason

Wormuth has presented evidence that Siba Ammari was more qualified than Ahmed for the position, including that Ammari was more familiar with the Levantine curriculum and was a certified tester for Levantine.  Estima Decl. ¶¶ 10, 14-15; *id.,* Ex. 1; Ahmed Depo. at 145:11-22. The selection panel's recommendation of a person whom they viewed to be a superior candidate— and Dean McCaw's acceptance of that recommendation—is a legitimate, non-discriminatory, nonretaliatory reason for Ahmed's non-selection.  *See Dominguez-Curry*, 424 F.3d at 1037; *Hines*, 2010 WL 2985536, at *6; *Tam*, 2008 WL 2811989, at *4.

---

[6] Ahmed's references to "the small department" or "the department" are unclear, but it is undisputed that he was a member of the Hebrew Department, not DLI's Arabic schools.  Stip. Stmt. Fact ¶ 5.  Ahmed introduces no evidence to support his belief that members of a different language department would have been aware of the protected activity of an Associate Professor of the Hebrew Language.
[7] Ahmed also lodges the same boilerplate evidentiary objections to the panel members' sworn declarations.  ECF No. 65-2 ¶¶ 92-95, 97.  As previously discussed, these boilerplate evidentiary objections lack merit.

United States District Court
Northern District of California

### 3.      Pretext

Ahmed first argues Wormuth's proffered reason is pretextual because DLI applied inconsistent standards.  Opp'n at 13-14.  Ahmed notes that "in the 14 years [he] worked for the DLI, he taught as a non-native speaker, not only holding his position as Associate Professor but being placed in positions of esteem and power by the DLI throughout his tenure, including but not limited to Acting Chair of the Hebrew Department."  *Id.* at 13.  He claims "DLI created a new set of standards only applied to Plaintiff, wherein they demanded the Levantine Team Leader position be filled by a native speaker."  *Id.*  Ahmed argues DLI "rigged the selection process to include a [sic] element he could never fulfill – to be a native speaker."  *Id.* at 14.  Other than his own speculation, however, Ahmed provides no evidence about "DLI's standard practices" for team leader selections, and there is thus no basis for the Court to conclude that DLI's interview procedures were any different than the procedures DLI normally employs for similar openings.

But even if Ahmed had presented evidence on this issue, the case he cites, *Bergene v. Salt River Project Agr. Imp. & Power Dist.*, 272 F.3d 1136 (9th Cir. 2001), does not support his position.  In *Bergene*, the court found that a change in job requirements can constitute specific and substantial evidence of pretext.  *Id.* at 142.  However, the selection criteria at issue changed during the selection process: the initial posting was open only to journeyman electricians and did not require supervisory experience; later, however, the posting was expanded to non-journeyman electricians and candidates were evaluated on their supervisory experience.  *Id.* at 1143.  These mid-process criteria changes adversely impacted the plaintiff's competitive advantage, and the Ninth Circuit thus found that these changes were sufficient to establish a genuine dispute of material fact regarding pretext.  *Id.*  Here, in contrast, there is no evidence that the selection process or selection criteria changed during the selection process; instead, the process was the same for all applicants: the selection panel membership remained the same for all candidates (Estima Decl. ¶ 2); the selection panel had a script of interview questions, with the same questions posed to each interviewee (*id.* ¶ 5; Al Thawahrih Decl. ¶ 16); and the selection panel member who did not speak Modern Standard Arabic or Levantine Arabic did not provide ratings for questions posed in Modern Standard Arabic or Levantine Arabic (Estima Decl. ¶¶ 6-7).

Ahmed also argues the selection process "stacked the deck" against him. Opp'n at 14. For example, he claims that including non-Arabic-speaking panel member(s) made it impossible for the entire panel to understand the answers provided in Modern Standard Arabic or Levantine. *Id.* But the evidence shows the other applicants faced the exact same hurdle. Ahmed also notes that "several panel members were not certified Arabic testers" (Opp'n at 14) and "the use of target language questions was unusual for Team Leader positions" (Ahmed Decl. ¶ 22), but, once again, Ahmed does not articulate how the panel makeup or target language questioning (which was consistent for all candidates) singled him out or how those processes are indicative of retaliatory animus. Ahmed also claims that his non-native speaker status was a disadvantage (Opp'n at 13), but native speaker status was not a selection criterion, and, in any event, there is no indication that familiarity and facility with the target language would not be a legitimate selection criterion for a language school position.

Finally, the Court notes that Ahmed admitted during his deposition that he was not the most qualified candidate for the role when he testified that "I am not saying I was the most qualified" candidate. Stip. Stmt. Fact ¶ 12. An employer has the discretion to select a better-qualified candidate, and the fact that the panel did so here is not pretext for retaliation. *Romo v. Springs Window Fashions Div., Inc.*, 263 F. App'x 640, 641 (9th Cir. 2008) ("[T]he record contains nothing that raises a genuine issue of material fact as to whether Springs' nondiscriminatory reason for not promoting her (another employee's superior qualifications) was pretextual); *Adetuyi v. City & Cnty. of San Francisco*, 63 F. Supp. 3d 1073, 1088 (N.D. Cal. 2014) (finding plaintiff failed to meet his burden of showing pretext where he failed to show his qualifications were "clearly superior" to the chosen candidate).

### 4. Summary

In sum, Ahmed has failed to establish a prima facie case of retaliation because he has not introduced any evidence to contradict the sworn testimony of the panel members that they were unaware of his prior protected activity. Even if Ahmed could establish a prima facie case, he himself testified he was not the most qualified candidate, and there is no evidence—much less specific and significantly probative evidence—demonstrating that the panel members' decision not

1    to interview Ahmed was pretext for discrimination.

2         Accordingly, the Court **GRANTS** Wormuth's motion as to Ahmed's Title VII retaliation

3    claim based on the Levantine Team Leader position.

4    **E.    Egyptian Testing Project Role**

5         **1.    Prima Facie Case**

6         Wormuth argues Ahmed's retaliation claim based on the Egyptian testing project role fails

7    because there was no open position to which he could have been transferred.[8]  Mot. at 17-18.

8    Ahmed contends this argument fails because "Dr. Amin's contemporaneous statements about

9    departmental needs contradict Defendant's position."  Opp'n at 14.  Specifically, he argues that

10   while Wormuth "now claim[s] that Dr. Amin was merely posing a hypothetical question as to

11   whether Plaintiff would like to join his department, this is a gross misstatement of the evidence.

12   In fact, Dr. Amin offered the job to Plaintiff directly, expressing his need for Plaintiff's skills in

13   test development, in order to improve the Arabic Tests."  *Id.* at 14-15.  Ahmed also argues Dr.

14   Amin "advised Plaintiff that he would be contacting Chief of Staff Steve Collins to facilitate

15   Plaintiff's transfer to Dr. Amin's department.  There was nothing hypothetical about the

16   exchange."  *Id.* at 15.

17        In his declaration, Dr. Amin states he had a conversation with Ahmed in which he said

18   Ahmed would be a good fit for an Egyptian testing project position and that the Egyptian

19   Department had a need for such a position, but he also states "no such position existed; rather it

20   was my opinion that there was a need for an Egyptian testing project position, but DLI first had to

21   fund the position."  Amin Decl. ¶¶ 3-4.  Dr. Amin states he reached out to DLI management to see

22   if DLI would fund an Egyptian testing project position within the Egyptian Department, but he

23   was informed that there was no funding for such a position.  *Id.* ¶ 5.  Dr. Amin also states the

24   Egyptian department was downsizing and, ultimately, was terminated by DLI.  *Id.* ¶ 6.

25        DLI is not required to create a new funded position for Ahmed, and the fact that it did not

26   do so here cannot support a cognizable retaliation claim as a matter of law.  *See, e.g., Rowell v.*

27

28   _____
     [8] The Court previously dismissed Ahmed's discrimination claims premised on the Egyptian testing project position.  *Ahmed*, 2023 WL 4205765, at *10-11.

United States District Court
Northern District of California

*Sony Pictures Television Inc.*, 743 F. App'x 852, 854 (9th Cir. 2018) (a retaliatory failure-to-hire claim "is premised on an employer's rejection of a candidate for *an open position*") (emphasis in original); *see also id.* ("Indeed, it stands to reason that an adverse employment action against a prospective employee arises only if there is employment to be had in the first place."); *Bernstein v. The MONY Grp., Inc.*, 228 F. Supp. 2d 415, 419 (S.D.N.Y. 2002) (dismissing Title VII claim where the plaintiff "has not alleged . . . that any position 'in recruiting and marketing' was ever created or that she was rejected from such position"); *Hamilton v. St. Joseph's Med. Ctr.*, 2014 WL 2624976, at *6 (E.D. Cal. June 12, 2014) (granting motion for summary judgment where "there was no current posting for the job plaintiff wanted"); *Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1032 (7th Cir. 2004) ("[T]he failure of the Slinger Board to create a new position for Hottenroth cannot, as a matter of law, be considered an adverse action . . . .  [A]n adverse employment action does not include an employer's refusal to grant an employee a discretionary benefit to which she is not automatically entitled"); *McQuilkin v. Del. River Port Auth.*, 2013 WL 5936983, at *13 (D.N.J. Nov. 6, 2013) ("[T]he failure of an employer to create a new position of grants administrator for Plaintiff — a job title that did not exist at the time — cannot be the basis of a retaliation claim").

Ahmed does not introduce a public job posting for this role.  He does not identify internal documents showing that DLI had authorized this role or that such a position was open and waiting to be filled.  And he does not submit any evidence to demonstrate that an Egyptian Testing Project role was later filled by someone else.  Without evidence of such a position, Ahmed fails to meet his burden of establishing a prima facie retaliation claim.  *See Rowell*, 743 F. App'x at 854. Accordingly, the Court finds Ahmed has failed to establish a prima facie case of retaliation, and summary judgment is appropriate in Wormuth's favor.  However, even if Ahmed could establish a prima facie case, he fails to produce sufficient evidence to raise a genuine issue of material fact as to whether Wormuth's proffered nondiscriminatory reason is merely a pretext for retaliation.

### 2.      Legitimate, Nondiscriminatory Reason

Assuming Ahmed could assert a retaliation claim with respect to a position that did not exist, Wormuth has presented evidence that DLI did not have funding for the position (Amin Decl.

25

¶ 5), the Egyptian Department was downsizing (*id.* ¶ 6); and DLI ultimately terminated the Egyptian Department (*id.*).  Indeed, DLI no longer has an Egyptian Department.  *Id.* ¶ 7.  As such, the Court finds Wormuth has offered a legitimate, nondiscriminatory reason for the adverse employment decision.  *See Jaiyeola v. Carrier Corp.*, 350 F. App'x 583, 587 (2d Cir. 2009) (finding that "downsizing" and ultimate "elimination of the entire department" was a legitimate, non-retaliatory reason for employment action); *Ellorin v. Applied Finishing, Inc.*, 996 F. Supp. 2d 1070, 1093 (W.D. Wash. 2014) ("general downsizing due to poor economic conditions" combined with the fact "that the position itself, although discussed, was never created or filled" was a legitimate, nondiscriminatory reason for employment actions).

### 3.    Pretext

In response to Wormuth's evidence, Ahmed states that in November 2021 Dr. Amin told the Investigations and Resolutions Directorate's investigator Mr. Matthew Trower that he believed Ahmed was not offered or allowed to transfer to the Egyptian Department "because of a rushed decision to end my contract, thereby disregarding the department's need for a candidate with my expertise, experience and talent."  Ahmed Decl. ¶ 25; Opp'n at 15.  He argues Wormuth's explanation "is clearly unworthy of credence as Dr. Amin's testimony to investigators directly contradicts Defendant's funding explanation."  Opp'n at 15.  However, other than his own declaration which consists of hearsay, Ahmed provides no evidence in support of this argument.  Regardless, even assuming Dr. Amin made this statement, his belief that Ahmed was not offered to transfer to the Egyptian Department because of a rushed decision to end his contract does not establish that the Egyptian Testing Project role existed in the first place.  Nor is there any support in the record for Ahmed's argument that he "was not offered the job in [Dr. Amin's] department, not because of a lack of funding, but simply because DLI management wanted to end Plaintiff's contract."  Opp'n at 15.  Again, that assertion does not demonstrate that the Egyptian Testing Project role existed, which is a fundamental requirement of a retaliatory non-selection claim.

### 4.    Summary

In sum, Ahmed has failed to establish a prima facie cases because the undisputed evidence demonstrates that the Egyptian Testing Project role did not exist: there is no position posting for

the role, the role was never approved or funded, the role was not filled by any other person, the Egyptian Department was downsizing, and DLI ultimately terminated the entire Egyptian Department. Ahmed thus cannot introduce specific and significantly probative evidence demonstrating that the Egyptian Testing Project role existed, and he does not demonstrate a triable issue of fact.

Accordingly, the Court **GRANTS** Wormuth's motion as to Ahmed's Title VII retaliation claim based on the Egyptian testing project position.

## F.      Miscellaneous Arguments in Opposition

In addition to the four positions at issue in this lawsuit, Ahmed raises several arguments in his Opposition.

### 1.      Hostile Work Environment

Ahmed argues there is a "pattern of retaliation" at issue. Opp'n at 15-17. Although unclear, this appears to be an attempt to raise a hostile work environment claim.[9] But Ahmed has not alleged a retaliatory hostile work environment claim. As the Court observed in its order dismissing the original complaint, "[b]ased on how the Complaint is written, the Court determines that Plaintiff is alleging discrete acts of discrimination, not a hostile work environment." ECF No. 21 at 5; *Ahmed*, 2023 WL 2309776, at *3. And to the extent Ahmed may have wished to assert a retaliatory hostile work environment in his amended complaints, he failed to do so—indeed, the operative Second Amended Complaint does not include the words "hostile," "harassment," or "pattern," or any other words that would have placed Wormuth on notice that he sought to assert a hostile work environment claim. It would be improper to allow Ahmed to assert such a claim for the first time now. *See Ellis v. SmithKline Beecham Corp.*, 2008 WL 3166385, at *12 (W.D. Wash. Aug. 5, 2008), *aff'd*, 363 F. App'x 481 (9th Cir. 2010) ("Plaintiff attempts to transmute her various disparate treatment claims into harassment and hostile work environment claims. Plaintiff

---

[9] "An employer is liable under Title VII for conduct giving rise to a hostile environment where the employee proves (1) that [she] was subjected to verbal or physical conduct of a harassing nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Pavon v. Swift Transp. Co., Inc.*, 192 F.3d 902, 908 (9th Cir. 1999).

United States District Court
Northern District of California

may not do so."); *see also Adrian v. Cnty. of Storey*, 2018 WL 1413383, at *3 (D. Nev. Mar. 21, 2018) ("A hostile work environment comprises unwelcome verbal or physical conduct—not prototypical adverse employment actions such as termination and loss of privileges."). Further, to the extent Ahmed claims the non-selections at issue occurred because of his protected activity, the Ninth Circuit requires a plaintiff to demonstrate hostile verbal or physical conduct that occurred "because of" his claimed protected characteristics. *Manatt v. Bank of Am.*, 339 F.3d 792, 798 (9th Cir. 2003); *see also Perez*, 2024 WL 4844383, at *9 ("[T]he alleged conduct underlying [plaintiff's] hostile work environment claim is 'identical' to her disparate treatment and retaliation claims, save for adding the word 'continually' to her allegations. . . . Because discrete acts may not be 'cobbled together' to a cognizable hostile work environment claim, Perez's claim must also be dismissed on this ground.").

### 2.    Events Prior to July 20, 2021

Ahmed argues he "applied for at least 12 jobs . . . yet received not one interview[.]" Opp'n at 5-6, 17. However, the Court already dismissed without leave to amend any claims "based on agency conduct prior to July 20, 2021." ECF No. 32 at 13-14; *Ahmed*, 2023 WL 4205765, at *7. The only claims remaining in this lawsuit relate to the four discrete non-selections discussed above, and Ahmed's conclusory assertions about other non-selections are not properly before the Court.

### 3.    Settlement Agreement

Ahmed argues DLI breached the parties' July 2021 settlement agreement by excluding him from vacancy notifications which would have enabled him to apply for such vacancies. Opp'n at 17. However, the Court already rejected this claim at the pleading stage, holding it "does not have subject matter jurisdiction over claims for breach of a Title VII settlement agreement." ECF No. 32 at 12; *Ahmed*, 2023 WL 4205765, at *6 ("[T]he fact that Plaintiff administratively exhausted his breach of settlement claim does not provide the Court the ability to hear his claims related to the underlying discrimination claims resolved in the July 16, 2021 agreement.").

## V.    CONCLUSION

Based on the analysis above, the Court hereby **GRANTS IN PART** and **DENIES IN**

1  **PART** Wormuth's motion for summary judgment.  The Court **GRANTS** Wormuth's motion as to

2  Ahmed's Title VII discrimination and retaliation claims based on the Hebrew teaching position at

3  Fort Eisenhower, Ahmed's Title VII retaliation claim based on the Assistant Dean of UAA

4  position, Ahmed's Title VII retaliation claim based on the Levantine Team Leader position, and

5  Ahmed's Title VII retaliation claim based on the Egyptian testing project position.  The Court

6  **DENIES** Wormuth's motion as to Ahmed's Title VII discrimination claim based on the Assistant

7  Dean of UAA position.

8        The parties are referred to Judge Kim for a further settlement conference.  The Court shall

9  conduct a further case management conference on January 9, 2025 at 10:00 a.m. by Zoom video

10  conference.  The webinar link and instructions are located at

11  https://cand.uscourts.gov/judges/hixson-thomas-s-tsh/.  This conference shall be attended by <u>lead</u>

12  <u>trial counsel</u>.  By January 2, 2025, the parties shall file an updated joint case management

13  statement containing the information in the Standing Order for All Judges in the Northern District

14  of California, available at the link above.  The Joint Case Management Statement form may be

15  obtained at: http://cand.uscourts.gov/civilforms.

16        **IT IS SO ORDERED.**

17

18  Dated: December 10, 2024

19

20  THOMAS S. HIXSON
   United States Magistrate Judge

21

22

23

24

25

26

27

28

United States District Court
Northern District of California